Elisabeth S. SHUSTER, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA HUMAN RELATIONS COMMISSION), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.

Decided Feb. 14, 2000.

Debra K. Wallet, Camp Hill, for petitioner.

Rebecca Dillon, Philadelphia, for respondent.

Before PELLEGRINI, J., LEADBETTER, J. and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.[1]

Elisabeth S. Shuster (Claimant) petitions for review from a decision of the Workers' Compensation Appeal Board (Board) that affirmed in part an order of a Workers' Compensation Judge (WCJ) granting her penalty petition and utilization review petition. The Board's decision also vacated that portion of the WCJ's determination ordering payment of attorney's fees submitted after the date of the WCJ's decision and remanded the matter to the WCJ for a determination of the reasonableness of those fees and a recalculation. Also before this Court is a petition to quash Claimant's appeal filed by the Pennsylvania Human Relations Commission (Employer).

On February 27, 1989, Claimant sustained an injury when a coat rack fell on her during the course of her employment with Employer and she injured her face. Thereafter, on February 21, 1990, Claimant sustained a second work-related injury when she was in an automobile accident on the way to a luncheon meeting. Claimant began receiving benefits pursuant to notices of compensation payable issued by Employer.

On June 7, 1994, Claimant filed petitions to review medical expenses and to reinstate compensation benefits with respect to both work-related injuries.[2] Subsequently, Claimant and Employer entered into the following stipulation of facts regarding the petitions:

3. [Employer] agrees to pay those unpaid medical expenses directly related to the February 27, 1989 and February 21, 1990 accidents, specifically including those bills set forth in Exhibits C–5 [provider, pharmacy and miscellaneous expenses] and C–6 [provider and pharmacy expenses still owed by Claimant] ... In addition, [Employer] will reimburse the Claimant for all medical expenses directly related to these accidents, specifically including those expenses set forth in Exhibit C–7 ...

4. [Employer] will reimburse Blue Cross and Blue Shield for any payments made by them for medical treatment related to these two work-related injuries. It is believed that Blue Shield's subrogation interest is approximately

---

1. This case was reassigned to the author on January 19, 2000.

2. The record does not indicate when or why Employer stopped paying Claimant benefits.

$500.00 and that Blue Cross's interest is approximately $1,600.00.

5. Within thirty (30) days of the date of this Stipulation, [Employer] will reinstate to Claimant any sick or other leave charged by [Employer] for absences directly related to these accidents, including the leave set forth in Exhibits C–3 [provider and pharmacy expenses] and C–4 [provider expenses paid by Claimant]. Claimant's leave record shall be restored to the same status as if she had been initially paid in accordance with the Act[3] and the management directives relating to work-related injuries.

(Stipulation of Facts Nos. 3, 4 and 5). On February 24, 1995, a WCJ issued a decision and order awarding Claimant compensation in accordance with the stipulation which was not appealed by either party.

On April 10, 1995, Employer filed an initial utilization review request, alleging that Claimant's orthopedic treatments and physical therapy were unnecessary and unreasonable. The Utilization Review Organization (URO) determined that no further orthopedic treatment was needed after March 16, 1995, and no physical therapy was necessary or reasonable after March 12, 1995. Claimant filed a request for reconsideration, and the URO concluded that the treatment and physical therapy were neither reasonable nor necessary after February 25, 1995.

Claimant then filed a penalty petition on July 24, 1995, alleging that Employer had violated Sections 430(b) and 435(d)(i) of the Act[4] by failing to make payment of medical expenses and interest and failing to reinstate her leave pursuant to the WCJ's February 24, 1995 order. Claimant requested penalties in the amount of 20% as well as attorney's fees for an unreasonable contest. Thereafter, on August 14, 1995, Claimant also filed a petition for review of the utilization review determination alleging that the URO determination was incorrect. Claimant's petitions were consolidated for hearing before a WCJ.

At the hearing before the WCJ, Claimant testified on her own behalf and Employer presented the testimony of Sherri Keider (Keider), an attendance administrator and assistant workers' compensation coordinator for the Commonwealth. The WCJ found Claimant's testimony most credible and persuasive regarding her claim that she had not been paid or reimbursed for medical expenses. However, the WCJ specifically rejected Claimant's testimony that her leave amounts were not properly reinstated, and accepted the testimony of Keider as persuasive regarding the reinstatement of Claimant's leave balances because it was not refuted by Claimant. The WCJ stated:

> The employer is responsible to pay the medical providers and reimburse the [C]laimant ... No other awards are justified based on the testimony and evidence presented. The [C]laimant testified that she received her regular salary from January 25, 1991 through August 18, 1995. The [C]laimant was not able to explain how her sick leave and/or annual leave should have accrued or have been properly credited. Additionally, the [C]laimant indicated that the Blue Cross and Blue Shield charges were to the best of her knowledge still outstanding. This testimony is not sufficient to make a finding or an award for penalties.

(WCJ's opinion at p. 10). The WCJ concluded that Employer did not have a reasonable basis to contest Claimant's petition and ordered the payment of attorney's fees and costs.

Both Claimant and Employer appealed. On August 21, 1998, the Board affirmed that portion of the WCJ's opinion regarding Claimant's leave and the payment of penalties related to the Blue Cross and Blue Shield bills. However, while agreeing with the WCJ that Employer did not

3. The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

4. 77 P.S. §§ 971(b) and 991.

have a reasonable basis to contest Claimant's penalty petition because it was aware of the bills it owed and failed to pay, the Board remanded the case to the WCJ for a recalculation of those fees specifying:

In his Order, the Judge states that Defendant is ordered and directed "to pay Claimant's attorney's fees at the hourly rate of $100.00 per hour for the hours itemized together with actual costs of filing and prosecuting this petition. Within ten days, Claimant's counsel shall submit a supplemental itemization of her hours worked since October 25, 1995, the last date reflected on C–15, and any costs incurred since October 25, 1996."

Although Claimant's counsel is entitled to payment for additional hours spent on the litigation of the Penalty Petition, such as hours spent drafting Proposed Findings of Fact, etc., at the same time, Defendant must be given the opportunity to object to the reasonableness of such fees. Furthermore, Section 440(b) requires that the judge make a finding as to the amount and length of time for which the fee is payable based upon the complexity of the issues involved, etc.

In the instant case, the only evidence of record regarding Claimant's counsel fees is Exhibit No. 15, an itemization of Counsel's hours spent in litigating the case from June 30, 1995 through October 25, 1995. If Claimant has submitted an additional itemization after the circulation of the Judge's Decision, Defendant has not had the opportunity to object to the items contained in the submission nor has the Judge made a finding regarding the reasonableness of these fees. Therefore, we must vacate the part of the Decision ordering payment of attorney fees and remand the case to the Judge so that he can make a

finding as to the reasonableness of the total amount of attorney fees submitted, pursuant to Section 440(b), and an Order based on that finding.

(Board's decision at pp. 12–13).

A remand hearing was held before a WCJ at which additional testimony was taken from the attorneys regarding their fees and time spent on the case, and on July 9, 1999, a decision and order was issued in accordance with the Board's remand order.[5] No appeal was filed by either party from the WCJ's July 9, 1999 order. However, on August 9, 1999, Claimant filed a petition for review with this Court from the Board's August 21, 1998 order remanding the matter to the WCJ for the recalculation of attorney's fees. Claimant alleged in her petition that she did not file an appeal earlier because the Board's decision was not a final, appealable order until the WCJ issued its decision on July 9, 1999, disposing of the attorney's fees issue. Employer filed a petition to quash Claimant's petition for review arguing that because the Board's August 21, 1998 order was interlocutory in nature and non-appealable, Claimant was required to file her appeal with the Board from the WCJ's July 9, 1999 remanded order. The petition to quash was listed with the merits of Claimant's appeal and is now before this Court.

■ Initially, we must address the motion to quash which presents an issue that has perplexed the workers' compensation bar; it involves the appeal process when a Board decision is adverse to a party on one issue, but is unappealable as interlocutory because the Board remands to the WCJ on another issue that is resolved in that party's favor. A Board order remanding a case to the WCJ for further action is interlocutory and cannot be appealed until the WCJ has issued his subsequent order.[6]

---

5. The WCJ found that Employer should reimburse Claimant and/or her attorney for litigation costs incurred since October 26, 1995, in the amount of $130.80, and a quantum meruit fee for services rendered between October 26, 1995 and January 21, 1997, in the amount of $1,500.00.

6. However, an appeal may be taken as of right from the Board's order if 1) the order remands the matter to the WCJ for execution of the adjudication of the Board in a manner that does not require the exercise of administrative discretion; or 2) it involves an issue

*SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385 (Pa. Cmwlth.1999). Claimant contends that because the WCJ issued a decision that was not adverse to her, she could not appeal back to the Board from that decision. *Wright v. Workmen's Compensation Appeal Board (Adam's Mark Hotel)*, 163 Pa. Cmwlth. 172, 639 A.2d 1347 (1994) (only a party who is aggrieved by a WCJ's decision may file an appeal from that decision with the Board).

In answering this contention, Employer alleges that this Court's decision in *Carolina Freight Carriers Corp. v. Workmen's Compensation Appeal Board (Armitage)*, 137 Pa.Cmwlth. 85, 585 A.2d 555 (1990), *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991) controls, and Claimant was required to first go back to the Board and then appeal to this Court. In *Carolina Freight*, the Carolina Freight Corporation entered into a permanent lease agreement with Ralph McGaughey in which he agreed to lease his truck to Carolina Freight and supply a driver in return for a percentage of the freight revenues that Carolina Freight received. McGaughey in turn hired the claimant's husband who was killed while hauling a load for Jones Motor Freight. The claimant filed a fatal claim petition naming McGaughey, Carolina Freight and Jones Motor Freight as respondents.

Following the hearings, the WCJ determined that Carolina Freight and McGaughey were co-employers of the claimant's husband and assessed liability for benefits equally between them. Carolina Freight appealed that decision and the Board affirmed in part and remanded in part. The remand related to the calculation of compensation payable. At the remand hearing, the WCJ took additional testimony and issued a new decision that awarded claimant a lesser amount in compensation benefits but reiterated its earlier findings and conclusions regarding the liability of Carolina Freight and McGaughey as co-employers. Carolina Freight did not file an appeal with the Board from this decision but instead filed petitions for review directly with this Court seeking to have the substantive issues in the original Board decision addressed. A motion to quash was filed by the claimant which we granted stating the following:

> In its brief, Carolina explains its reasoning in bringing this case directly to the Commonwealth Court following the second [WCJ's] decision. Carolina notes that the August 1989 decision of the Board addressed the substantive issue presented by Carolina here, and affirmed the [WCJ] on that issue. But Carolina points out that this Board order was interlocutory, because the order also remanded the case to the [WCJ] for recalculation of benefits ... Carolina reminds us ... that such interlocutory orders are not appealable as of right ... Carolina argues that the second [WCJ's] decision, entered pursuant to the Board's remand, had the effect of making the Board's interlocutory order final and appealable. It is asserted that Carolina brought this action in the proper forum by filing a petition for review of the August 1989 Board order with this Court within 30 days after it became a final order by virtue of the [WCJ's] issuance of his second decision on March 1, 1990.

> \*     \*     \*

> What Carolina is attempting to do is appeal a referee's order directly to the Commonwealth Court, bypassing the Board. No authority has been referenced by Carolina which permits it to follow this procedure. Essentially, Carolina has taken the position that a second appeal to the Board on the same grounds rejected by the Board in Carolina's first appeal would serve no purpose, and would merely cause the further delay in reaching a final resolution

that would ultimately evade appellate review if an immediate appeal was not allowed. *See*

Pa. R.A.P. 311(f).

of this matter. This argument is not without merit, and we are not unsympathetic to Carolina's position. However, this Court cannot alter the administrative appeal procedure set forth in the Act on this basis.

*Id.,* 585 A.2d at 557. Claimant contends that *Carolina Freight* is not controlling in that Carolina Freight filed a petition directly with this court appealing the non-adverse WCJ's order, while, in this case, the petition for review referenced the Board's order.

In addressing Claimant's argument, we echo what we said in *Carolina Freight*— that Claimant's arguments are not without merit: how can she appeal to the Board from the WCJ's decision on remand when the decision was not adverse to her, and why should she appeal to the Board when there is nothing left for the Board to do? However, what this position does not answer is what would happen if the other party appealed the WCJ's order which was adverse to him or her; appeals would then be pending before this Court and the Board, either resulting in the case being heard on appeal piecemeal or petitions being filed contending that the order appealed as final was no longer final.

Even though this case is different than that presented in *Carolina Freight,* the

rationale behind that decision—that a matter could not come to this Court directly from a WCJ's decision without first going through the Board—is still applicable in that it fosters administrative consistency, and no judgement has to be made as to whether the decision is adverse or not. Furthermore, no appeals need to be taken because a party is not sure where to appeal and there will be no appeals in the same case following separate tracks.

■ Consequently, no matter whether a party appeals the Board's decision (as in this case) or the WCJ's decision (as in *Carolina Freight* ), he or she is required to follow the normal procedure to appeal a WCJ decision which is to file an appeal with the Board within 20 days after notice of that decision has been received. Section 423 of the Act, 77 P.S. § 853. The party can then file a motion with the Board requesting that the Board make its previous order final. In implementing this decision, we would hope the Board would adopt appropriate procedures. Because this case is different than *Carolina Freight* and because it deals with how a Board's order can be made final, we will apply it prospectively only and will not quash Claimant's appeal.[7]

Turning then to the merits of Claimant's appeal,[8] she alleges that the WCJ erred by

7. In *Batoff v. Bureau of Professional and Occupational Affairs, State Board of Psychology,* 158 Pa.Cmwlth. 267, 631 A.2d 781 (1993), *affirmed,* 547 Pa. 518, 692 A.2d 139 (1994), citing *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we reiterated the three-prong test used to determine whether a new judicial principle should be applied retrospectively or prospectively. Citing *Chevron,* we stated that holding a new principle to prospective application applied only where the new decision met all of the following conditions:

(1) the decision establishes a new principle of law by either overruling clear past precedent or involves an issue of first impression, the resolution of which was not clearly foreshadowed;
(2) the merits of purely prospective application of the new decision outweigh the disadvantages, based on the history of the rule in question, its purpose and effect, and wheth-

er a retrospective application would retard operation of the new law, and
(3) the inequity of a retroactive application of the new rule outweighs the benefit of such an application.
In this case, all three prongs of the test are met as this is a case of first impression; the merits of allowing an appeal outweigh the disadvantage of not being able to appeal an adverse decision of the Board; and allowing the announced policy to be prospective gives notice to future litigants while not penalizing Claimant in this case.

8. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

failing to place on Employer the burden of proving compliance with the WCJ's February 24, 1995 order. Specifically, Claimant takes issue with the Board's statement that:

> The burden was on Claimant to establish non-compliance with the Judge's February 1995 Decision and Order since Claimant filed the Penalty Petition seeking penalties for this non-compliance. As found by the Judge, Claimant failed to prove that [Employer] did not comply with this February 1995 Order in regard to reimbursement to Blue Cross and Blue Shield.

(Claimant's brief at p. 17, citing Board's opinion at pp. 9–10). Claimant argues that it is the employer and not the claimant who bears the burden of proving that no violation of the Act occurred.

■ This Court has held that a violation of the Act or its regulations must appear in the record for a penalty to be appropriate. *DeVore v. Workmen's Compensation Appeal Board (Sun Oil Company)*, 165 Pa.Cmwlth. 615, 645 A.2d 917 (1994), *petition for allowance of appeal denied*, 540 Pa. 606, 655 A.2d 993 (1994). Therefore, once a claimant files a penalty petition, the onus is on him or her to establish a violation of the Act or its rules or regulations. Although Claimant is correct that it would be illogical to require the party against whom a penalty petition is brought to have the burden of proof, the claimant who files the penalty petition must first meet his or her initial burden and prove that a violation of the Act occurred. Once that is done, the burden then shifts to the employer to prove that it had not. However, in this case, Claimant had the initial burden of proving a violation and failed to do so. As such, neither the WCJ nor the Board erred by placing the initial burden of proof on Claimant.[9]

■ Claimant also argues that the WCJ erred by failing to order the reinstatement of her leave amounts. The stipulation adopted in the WCJ's February 25, 1995 order provides:

> Within thirty (30) days of the date of this Stipulation, [E]mployer will reinstate to Claimant any sick or other leave charged by [Employer] for the absences directly related to these accidents, including the leave set forth in Exhibits C–3 and C–4. Claimant's leave record shall be restored to the same status as if she had been initially paid in accordance with the Act and the management directives relating to work-related injuries.

(Stipulation of facts No. 5). In support of her contention that leave had not been reinstated, Claimant submitted exhibits and testified on her own behalf. However, although Claimant stated that she received documentation relating to her leave benefits, she could not tell what had been reinstated and what had been taken away. (Reproduced Record at 43a). Moreover, at the hearing before the WCJ, the following exchange took place between Claimant and the WCJ:

> [WCJ]: So you never got a resolution of what was reinstated and what you actually had to take as a result of the work injury?
>
> Claimant: I have no final resolutions that I can say with certainly [sic].

(Reproduced Record at 43a). While Claimant was unable to say with any certainty whether her leave had not been restored, Employer's witness testified in detail regarding the calculation of Claimant's leave and definitively stated that

---

9. We also reject Claimant's argument that the WCJ erred by failing to require Employer to pay penalties for failure to reimburse Blue Cross and Blue Shield. Based on our review of the record, Claimant did not meet her burden of proving a violation of the February 25, 1995 order necessitating the award of penalties. Although Claimant introduced a document from Blue Cross and Blue Shield indicating payments made for treatment rendered to Claimant from April 15, 1993 through August 4, 1993, Claimant testified only that it was her "understanding that there is still money owed." (Reproduced Record at 40a, 150a). This testimony was insufficient to prove a violation of the Act or, for that matter, shift the burden to Employer to prove that a violation of the Act had not occurred.

Claimant's sick leave had been restored for all periods. (Reproduced Record at 71a). Because the WCJ found Employer's witness credible on this issue, and the WCJ has the sole authority to make determinations regarding questions of credibility and conflicting evidence, *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383 (Pa.Cmwlth. 1995), we will not disturb that determination on appeal.

Accordingly, the decision of the Board is affirmed.

## O R D E R

AND NOW, this 14th day of February, 2000, the Employer's petition to quash is denied and the order of the Workers' Compensation Appeal Board, No. A97–1568, dated August 21, 1998, is affirmed.