# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pepperidge Farm, Inc.,      :
           Petitioner      :
           :
       v.      :    No. 71 C.D. 2015
           :    Submitted: May 15, 2015
Workers' Compensation Appeal      :
Board (Lanza),      :
           Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: August 14, 2015**

Pepperidge Farm, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board that affirmed a decision of Workers' Compensation Judge Terry Knox (Second WCJ) which, in part, awarded Michael Lanza (Claimant) a 50 percent penalty for Employer's failure to reimburse Healthcare Recoveries' (Health Insurer's)[1] $7,200.88 subrogation lien. Second WCJ also awarded Claimant *quantum meruit* attorney fees, in the amount of $1,000, for Employer's unreasonable contest of the penalty petition. Employer contends the Board erred in affirming the penalty award where WCJ James A. Stapleton (First WCJ) never ordered Employer to pay the subrogation lien upon which the penalty was based. Employer further argues the Board erred in

---

[1] Healthcare Recoveries is a collection agent for the Independence Blue Cross Family of Companies. See Second WCJ's Op., 11/20/13, Finding of Fact No. 2. Independence Blue Cross is Claimant's health insurance carrier.

affirming Second WCJ's award of an attorney fee for an unreasonable contest of the penalty petition because the penalty was erroneously imposed. For the reasons that follow, we reverse in part and remand.

## I. Background

In February 2010, Claimant sustained a work-related injury in the course of his employment (first injury-left arm). In March 2010, Employer filed a notice of compensation payable (NCP), medical only, accepting Claimant's work injury. The NCP described Claimant's injury as a contusion of his left forearm. The NCP also provided for the payment of Claimant's reasonable and necessary medical expenses related to the treatment of his work injury.

In March 2011, Claimant sustained a second work-related injury in the course of his employment (second injury-neck/low back). Employer issued a temporary NCP for this injury, which described Claimant's injury as a contusion of his neck and left shoulder. The temporary NCP provided for total disability at the rate of $638.08 per week based on an average weekly wage of $957.12.

Shortly thereafter, Employer filed a notice stopping temporary compensation effective March 22, 2011. Employer also filed an accompanying notice of workers' compensation denial. Employer took the position that Claimant's soft tissue injury resolved, and that Claimant was not disabled within the meaning of the Workers' Compensation Act[2] (Act).

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

2

In April 2011, Claimant filed a petition to review compensation benefits, a petition to review medical treatment and billing, and a petition for penalties. The Bureau of Workers' Compensation (Bureau) assigned these petitions to First WCJ. Claimant also filed a claim petition for benefits arising out of his second injury-neck/low back. Employer filed a timely answer denying Claimant's material allegations. The Bureau also assigned the claim petition to First WCJ.

Following hearings at which both parties presented expert medical evidence,[3] First WCJ circulated a decision and order granting in part Claimant's petition to review compensation benefits and amending the description of Claimant's first work injury to include a laceration of Claimant's left forearm and a neuropathic pain disorder affecting Claimant's left arm. See First WCJ's Op., 5/2/12, Finding of Fact (F.F.) No. 32; Reproduced Record (R.R.) at 13a-14a. Importantly, however, First WCJ denied Claimant's request to include injuries to Claimant's cervical spine, left shoulder or lumbar spine. Id.

First WCJ also granted in part Claimant's claim petition regarding his second injury-neck/low back. To that end, First WCJ found as a fact that Claimant sustained a *temporary* aggravation of pre-existing conditions of his cervical spine and lumbar spine as a result of the second injury-neck/low back. F.F. No. 32; R.R.

---

[3] Claimant submitted medical evidence from his treating physician, Dr. Robert McMurtrie, Jr. (Claimant's Physician). Employer submitted medical evidence from Dr. Evan S. Kovalsky (Employer's Physician), a board certified orthopedic surgeon.

at 14a. However, First WCJ further found that Claimant fully recovered from his second work injury as of July 1, 2011. Id.

Consequently, in his May 2012 order, First WCJ limited Health Insurer's reimbursement to Claimant's medical expenses after the first injury-left arm to "office visit with [Claimant's Physician] on April 4, 2011, and his medical expenses for the epidural steroid injection of his lumbar spine performed on May 18, 2011 …." See First WCJ's Order, 5/2/12; R.R. at 17a.

In addition, First WCJ denied Claimant's petition to review medical treatment and billing and petition for penalties, both filed by Claimant in April 2011. Id. at 18a. First WCJ also denied Claimant's request for unreasonable contest attorney fees, but awarded Claimant litigation costs in the amount of $1,937.48. Id.

While an appeal of the foregoing matters continued, Claimant filed another petition with which we are currently concerned. In January 2013, Claimant filed a petition for penalties against Employer and its insurer. Claimant alleged Employer violated the Act by: (1) failing to pay medical treatment and prescription bills to providers; (2) failing to reimburse Claimant's out-of-pocket expenses for co-pays and deductibles; (3) failing to reimburse Health Insurer's subrogation lien; (4) failing to pay, or to properly deny, payment for subsequent related treatment; and, (5) failing to reimburse Claimant's counsel's litigation costs.

4

The Bureau assigned this new penalty petition to Second WCJ. Apparently, the full file from the earlier litigation was not available to Second WCJ. See Second WCJ Op., 11/20/13, F.F. No. 3, R.R. at 21a-22a. Ultimately, Second WCJ issued a decision and order granting Claimant's penalty petition in part. Most significant here, Second WCJ directed Employer to reimburse Health Insurer's $7,200.88 subrogation lien and accrued statutory interest from the date of First's WCJ's decision. See Second WCJ's Order, 11/20/13; R.R. at 30a. Second WCJ also awarded a 50 percent penalty of $3,600.44. Id.

Among other items,[4] Second WCJ also confirmed the prior award of $1,937.48 in litigation costs, with accrued statutory interest from the date of First WCJ's decision, as well as an unspecified amount for new litigation costs Id. In addition, Second WCJ awarded Claimant's counsel a 50 percent penalty on the prior award of litigation costs. Id. Second WCJ also awarded Claimant's counsel a *quantum meruit* attorney fee of $1,000 in addition to Claimant's benefits.

Employer appealed Second WCJ's order. In affirming the 50 percent penalty imposed for failing to pay the purported $7,200.88 subrogation lien, the Board reasoned (with emphasis added):

> In a penalty petition, the claimant bears the burden of establishing a violation of the Act or its rules or regulations that appears on the face of the record.

---

[4] Second WCJ directed Employer to reimburse Health Insurer's $953.93 subrogation lien for payments related to the second injury-neck/low back with accrued interest. See Second WCJ's Order, 11/20/13; R.R. at 30a. Second WCJ also directed Employer to reimburse Health Insurer's additional recoverable subrogation liens, if any, related to the first injury-left arm, if not already awarded by First WCJ. Id.

Shuster v. [Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)], 745 A.2d 1282 (Pa. Cmwlth. 2000). To avoid a penalty, the employer then carries the burden of proving that no violation of the Act occurred. Id.

Pursuant to Section 430(b) of the Act, 77 P.S. §971, any insurer or employer who terminates, decreases or refuses to make any payment provided for in a decision without filing a petition and being granted a supersedeas shall be subject to a penalty.

The May 2, 2012 Decision and Order of [First WCJ] was entered into the record. (Exhibit J-4). [First WCJ] specifically ordered that [Employer] shall reimburse [Health Insurer] in full for its payments which amounted to $7,200.88. (Exhibit J-4, Conclusion of Law 7. [First WCJ] further ordered that [Employer] shall pay Claimant's reasonable litigation costs in the amount of $1,937.48 (Exhibit J-4, Conclusion of Law 15).

* * * *

The first payment at issue was a $7,200.88 subrogation lien ordered to be paid to [Health Insurer]. This was specifically ordered in [First WCJ's] Decision, however [Employer] never made payment. [Employer] does not deny it failed to make payment on this lien, however argues [sic] that certain parts of this lien were payments that related to non-work related conditions of Claimant. However, this is simply [Employer] attempting to reargue what had already been decided in [First WCJ's] original Decision. Once that Decision was issued, [Employer] could not simply refuse to pay because it disagreed with [First WCJ's] findings that the subrogation lien was entirely related to Claimant's work injury. [Employer's] sole recourse was to appeal the Decision, which it failed to do.

Bd. Op., 12/23/14, at 3-4; R.R. at 36a-37a.

6

The Board also upheld the 50 percent penalty on the litigation costs for the same reason. See Bd. Op. at 4; R.R. at 37a. In addition, the Board upheld Second WCJ's award of an attorney fee for unreasonable contest. Bd. Op. at 5; R.R. at 38a. Employer petitions for review.[5]

## II. Discussion

### A. $7,200.88 Subrogation Lien

Employer contends the Board erred in affirming Second WCJ's award of penalties for Employer's failure to pay Health Insurer's $7,200.88 subrogation lien where First WCJ never ordered payment of that lien. Ultimately, to avoid a penalty, Employer acknowledges it must show no violation of the Act occurred. Shuster. To that end, Employer asserts First WCJ did not order payment of the $7,200.88 subrogation lien. Therefore, Second WCJ's finding that he did is not based on substantial competent evidence. We agree.

As developed more fully below, there are three primary problems with Second WCJ's determination that First WCJ required reimbursement of Health Insurer's $7,200.88 subrogation lien. First, most of the treatment described in the subrogation lien letter is for areas of the body not involved in Claimant's first injury-left arm. Second, most of the treatment described in the subrogation lien letter was rendered outside the closed period for Claimant's second injury-neck/shoulder. Third, and most telling, contrary to the statements by the Second

---

[5] This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa. C.S. §704; Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

7

WCJ and the Board, First WCJ did not expressly order reimbursement of the full $7,200.88 lien; instead, reimbursement was limited to two items only.

In Finding of Fact No. 24, First WCJ stated (with emphasis added):

> [Claimant] also presented documentary evidence relating to his medical expenses in support of his Petitions in this matter.  <u>Based upon a careful review thereof, this Judge hereby finds as a fact that [Health Insurer] made payments totaling the sum of $7,200.88 on account of the medical expenses incurred by him following his [first injury].</u>  In addition, this Judge hereby further finds as a fact that [Claimant] also incurred medical expenses totaling the sum of $5,998.74 from Summit Pharmacy for the medications of OxyContin, Lyrica, Metaxalone, and Skelaxin following his second work injury of March 13, 2011.

First WCJ Op., F.F. No. 24; R.R. at 9a.

In Finding of Fact No. 32, First WCJ determined that Claimant sustained additional injuries as a result of the first injury-left arm, when his arm got caught in a dough machine.  However, First WCJ did not find Claimant sustained any neck, back or shoulder injuries.  More specifically, First WCJ stated:

> [I]n addition to a contusion of his left forearm, [Claimant] also sustained a laceration of his left forearm and a neuropathic pain disorder affecting his left arm as a result of his first work-related injury of February 11, 2010.  <u>However, this Judge further finds as a fact that [Claimant] did not sustain an injury to his cervical spine, left shoulder, or lumbar spine as a result of his first work-related injury</u>.

First WCJ Op., F.F. No. 32; R.R. at 13a (emphasis added).

8

Included in Employer's reproduced record is Health Insurer's itemized claim for reimbursement (subrogation lien letter), dated October 18, 2011, in the total amount of $7,200.88.[6] See R.R. at 42a-45a. The vast majority of these items are also included in Health Insurer's June 3, 2013, claim for reimbursement, admitted into evidence as Employee's Exhibit No. 5. The amount of the later claim is $10,787.86. Both reimbursement claims are primarily for treatment after the first injury-left arm and before the second injury-neck/shoulder. Of significance, the diagnoses for most of the treatment relate to Claimant's neck, shoulder or low back, parts of Claimant's body *not* involved in the adjudicated description of the first injury.

Furthermore, the majority of the items in Health Insurer's reimbursement claims are for treatment of cervical and lumbar conditions outside the three-and-a-half month window between the occurrence of Claimant's second injury-neck/shoulder in March 2011, and July 1, 2011, the date that injury resolved. This timing supports Employer's position that First WCJ never ordered reimbursement for these items.

Additionally, First WCJ specifically limited Health Insurer's reimbursement as follows:

---

[6] As a general rule, only items which are part of the certified record are considered on appeal. Kochan v. Dep't of Transp. Bureau of Driver Licensing, 768 A.2d 1186 (Pa. Cmwlth. 2001). Here, Health Insurer's October 2011 reimbursement claim for $7,200.88 is the focus of this appeal. Given its similarity in form and substance to Health Insurer's June 2013 reimbursement claim for $10,787.86, admitted into evidence by Second WCJ, and the lack of any expressed concern as to its authenticity or objection to its inclusion in the reproduced record, we discern no harm or prejudice to the parties in referring to it.

However, based also upon the foregoing findings, as well as a careful review of [Claimant's] documentary evidence, this Judge hereby further finds and concludes that [Claimant] is entitled to have [Employer's] workers' compensation insurance carrier reimburse [Health Insurer] <u>only for its payments on account of his medical expenses for his office visit with [Claimant's Physician] on April 4, 2011, and the epidural steroid injection of his lumbar spine performed on May 18, 2011</u> ….

First WCJ Op., F.F. No. 32; R.R. at 14a.

Similarly, in Conclusion of Law (C.L.) No. 7, First WCJ stated:

[Claimant] is also entitled to have [Employer's] workers' compensation insurance carrier reimburse [Health Insurer] for its payments on account of his medical expenses for his office visit with [Claimant's Physician] on April 4, 2011, and his medical expenses for the epidural steroid injection of his lumbar spine on May 18, 2011, in this matter.

First WCJ Op., C.L. No. 7; R.R. at 16a.

Thus, it appears First WCJ's Finding of Fact No. 32 and Conclusion of Law No. 7 limit Health Insurer's reimbursement to payment for the April 2011 office visit and May 2011 steroid injection of the spine. These treatments occurred after the second injury-neck/shoulder of March 2011. First WCJ's order contains no other specific reimbursement language.

Neither the Board nor Second WCJ cite to any specific language in First WCJ's decision actually ordering Employer to reimburse Health Insurer in the amount of $7,200.88. Mistakenly, the Board stated "First WCJ specifically

10

ordered that [Employer] shall reimburse [Health Insurer] in full for its payments which amounted to $7,200.88. (Exhibit J-4, Conclusion of Law 7)." Bd. Op. at 3; R.R. at 36a (emphasis added). Clearly, First WCJ's Conclusion of Law No. 7, quoted above, does *not* order full payment of the lien.

Consequently, First WCJ, in Finding of Fact No. 24, simply summarized the payments Health Insurer made following Claimant's first injury-left arm, which did not include neck, back or shoulder components. However, First WCJ did not order Employer to reimburse Health Insurer the $7,200.88 amount.

Rather, First WCJ ordered Employer to pay any and all reasonable and necessary medical expenses that Claimant incurred for treatment of "his first work-related injury as described in [First WCJ's decision], subject to utilization review and the other cost containment provisions of the [Act]." First WCJ Op., C.L. No. 4; R.R. at 15a-16a; Order; R.R. at 17a (emphasis added). Similarly, First WCJ ordered Employer to pay any and all reasonable and necessary medical expenses which Claimant incurred for treatment of "his second work-related injury through and including June 30, 2011, as described in [First WCJ's decision], subject to utilization review and the other cost containment provisions of the [Act]." First WCJ Op., C.L. No. 6; R.R. at 16a; Order; R.R. at 17a (emphasis added).

Second WCJ was apparently working at a disadvantage because he lacked many of the documents available to First WCJ and because the subrogation

11

lien letter lacked sufficient detail. See Second WCJ Op., 11/20/13, F.F. No 3, R.R. at 22a (noting that Claimant's appeal of First WCJ's decision was still pending and that without access to the exhibits from that proceeding "I cannot determine how [First WCJ] arrived at [Health Insurer's] subrogation figure of $7,200.88 for the [first] injury, why he limited [Health Insurer's] 2011 subrogation lien to two service dates, or why Claimant's … pharmacy bills were entirely denied."). Further, in his November 2013 decision, Second WCJ made the following finding regarding Health Insurer's June 2013 claim for reimbursement:

> Claimant offered [Health Insurer's] four-page June 13, 2013 statement identifying only the [first] injury date and listing services provided and paid for from April 2010, to December 5, 2012. The exhibit does not fully or adequately differentiate which payments were for treatment for the work-related [first] left arm injury and which were for the [second] mostly non-work-related lumbar and cervical spine injuries. Further, I cannot determine from it which specific charges were offered during the prior litigation, which were specifically included in $7,200.88 reimbursement order for the [first] injury, and which were part of the unspecified amounts for the [second] injury partially awarded and partially denied.

F.F. No. 9 (emphasis added).

As Second WCJ acknowledged in Finding of Fact No. 9, Health Insurer's itemized subrogation lien letter does not distinguish between items for treatment of the first injury-left arm and items for treatment of shoulder, lumbar and cervical spine conditions. Second WCJ continued, "[u]pon submission of a clearly itemized statement representing additional arm treatment not already awarded, [Health Insurer] might be entitled to additional reimbursement. Statutory

12

interest on such amounts is forfeited because the delay is Claimant's, not Employer's." Id.

Given the foregoing, we hold Second WCJ erred by ordering Employer to pay Health Insurer's $7,200.88 subrogation claim and by imposing a 50% penalty on that amount.

## B. Unreasonable Contest Attorney Fee

Employer also contends the Board erred in affirming Second WCJ's award of a *quantum meruit* attorney fee for an unreasonable contest of the penalty petition where the penalty was erroneously awarded. We agree.

A claimant who prevails in whole or in part is entitled to recover a reasonable attorney fee from the insurer unless the insurer establishes a reasonable basis for contesting liability. Section 440(a) of the Act;[7] Lebanon Valley Brethren Home v. Workers' Comp. Appeal Bd. (Flammer), 948 A.2d 185 (Pa. Cmwlth. 2008). A contest is reasonable when it resolves a genuinely disputed issue. Flammer. In order to determine whether a contest is reasonable, the reviewing court must look to the totality of the circumstances. Id. A successful contest of a penalty petition constitutes a reasonable contest. Id. Consequently, Claimant is not entitled to an attorney fee for unreasonable contest in this case. Id.

---

[7] Added by the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. §996(a).

13

## C. Remand

Although First WCJ did not order payment of Health Insurer's $7,200.88 reimbursement claim, we agree with Second WCJ that Health Insurer may be entitled to reimbursement for other bills for treatment of Claimant's first injury-left arm. See Second WCJ Op. F.F. No. 9; R.R. at 25a. Therefore, we remand the matter with the hope that the needed documents will now be available to the fact-finder and that a more informed decision can be made as to what additional reimbursement, if any, needs to be awarded.

## III. Conclusion

For the above reasons, we reverse the Board's order to the extent it affirmed Second WCJ's order awarding Claimant payment of Health Insurer's $7,200.88 subrogation lien, and a 50 percent penalty thereon. Because Employer successfully challenged Second WCJ's penalty award for the subrogation lien, we also reverse Second WCJ's award of an attorney fee for an unreasonable contest.

In addition, to the extent that this issue has not been resolved in Claimant's appeal from First WCJ's 2012 decision and order (involving Bureau Claim Nos. 3644930 and 3835246), we remand this case for the limited purpose of determining whether Health Insurer is entitled to additional reimbursement for medical bills incurred for treatment of Claimant's first injury-left arm. We leave to the thoughtful discretion of the fact-finder whether Health Insurer may submit a more useful itemized list of unreimbursed charges.

ROBERT SIMPSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pepperidge Farm, Inc.,          :
             Petitioner      :
                              :
      v.                      :    No. 71 C.D. 2015
                              :
Workers' Compensation Appeal    :
Board (Lanza),                  :
             Respondent    :

## O R D E R

**AND NOW**, this 14th day of August, 2015, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **REVERSED** to the extent it affirmed WCJ Knox's order awarding Respondent Lanza: payment of Healthcare Recoveries' $7,200.88 subrogation lien, a 50 percent penalty thereon in the amount of $3,600.44, and a *quantum meruit* attorney fee of $1,000 for an unreasonable contest.

Further, this case is **REMANDED** to the Board, with directions for a remand to WCJ Knox, for the limited purpose of determining, consistent with the foregoing opinion, whether Healthcare Recoveries is entitled to reimbursement for any outstanding bills for treatment of Respondent's February 2010 work injury.

In all other respects, the order of the Board is **AFFIRMED**. Jurisdiction is relinquished.

 

_____
ROBERT SIMPSON, Judge