IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LifeQuest Nursing Center,                    :
                              Petitioner     :
                                             :
                    v.                       :
                                             :
Workers' Compensation Appeal                 :
Board (Tisdale),                             :       No. 1250 C.D. 2017
                              Respondent      :       Submitted: February 23, 2018


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                                  FILED: July 19, 2018


            LifeQuest Nursing Center (Employer) petitions this Court for review of
the Workers' Compensation (WC) Appeal Board's (Board) August 24, 2016 order
modifying the Workers' Compensation Judge's (WCJ) decision to include left
sacroiliitis sprain and left leg sprain in the description of Elizabeth Tisdale's
(Claimant) work injury, reversing the WCJ's denial of Claimant's penalty petition
and termination of Claimant's benefits, and remanding for the WCJ to determine the
penalty amount.  Employer presents three issues for this Court's review: (1) whether
the Board erred by concluding that the issuance of Supplemental Agreements during
a period in which Employer was paying WC benefits pursuant to a Notice of
Temporary Compensation Payable (NTCP) acts as an admission of liability for the
alleged work-related injury; (2) whether the Board erred by failing to conclude that
Employer's timely filing of a Notice Stopping Temporary Compensation Payable
(NSTCP)  and a Notice of WC Denial (NCD) act to preserve all of Employer's rights,
defenses and obligations with respect to the underlying claim; and (3) whether the
Board erred by concluding that the credible testimony of Robert Mauthe, M.D. (Dr.

Mauthe)[1] was not substantial, competent evidence to support the termination of Claimant's WC benefits.

On April 23, 2014, Claimant sustained a left leg sprain when she tripped and fell over a patient's wheelchair at work. On May 9, 2014, Employer issued an NTCP in order to properly investigate the reported work-related injury. On June 27, 2014, Employer filed two Supplemental Agreements[2] with the WC Bureau (Bureau) because Claimant was released to work and Employer made hours available to her. *See* Reproduced Record (R.R.) at 214a-217a. On July 11, 2014, Claimant stopped working and Employer filed an NSTCP and an NCD. *See* R.R. at 160a-163a.

On July 24, 2014, Claimant filed a Claim Petition averring that she sustained a work injury on April 23, 2014, and a penalty petition alleging that Employer violated the WC Act (Act)[3] by using Bureau documents in an inappropriate manner and discontinuing her partial benefits in light of the Supplemental Agreements. WCJ hearings were held on September 3 and December 3, 2014 and March 4, 2015. On July 28, 2015, the WCJ granted the Claim Petition, in part, and terminated Claimant's benefits as of October 9, 2014. The WCJ determined that Employer was not bound by the Supplemental Agreements because the NSTCP properly stopped benefits. Specifically, the WCJ concluded:

> This [WCJ] finds the issuance of the Supplemental Agreements does not bind [Employer] to the acceptance of the work injury. [Employer] issued [an NTCP] on May 9, 2014 indicating the 90-day period begins on 4/25/14 and ends 7/23/14. Two Supplemental Agreements were issued modifying Claimant's benefits as of June 13 and June 20,

---

[1] The WCJ expressly found "[t]he testimony of Dr. Mauthe [] credible." WCJ July 28, 2015 Dec. at 7.

[2] One Supplemental Agreement modified Claimant's benefits as of June 13, 2014 and the other Supplemental Agreement modified Claimant's benefits as of June 20, 2014.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

2

2014. The [NSTCP] and [NCD] were both issued on July 11, 2014. The [NSTCP] and [NCD] were timely issued within the 90-day period. By utilizing Supplemental Agreements, [Employer] was attempting to document the benefits it paid to Claimant upon her return to work while the [NTCP] was in effect. There is no document known as a 'Temporary Supplemental Agreement', and by issuing the [Supplemental] Agreements[,] [Employer] reflected the benefits it was paying to Claimant during her return to work during the initial 90-day period. This [WCJ] finds the issuance of the [NSTCP] and [NCD] nullifies the Supplemental Agreements and [Employer] had no responsibility to pay ongoing benefits after issuing the [NSTCP] and [NCD].

WCJ July 28, 2015 Dec. at 6-7.

Claimant appealed to the Board which, on August 24, 2016, modified the WCJ's decision to include left sacroiliitis sprain and left leg sprain in the description of Claimant's work injury, reversed the WCJ's denial of Claimant's penalty petition and termination of Claimant's benefits, and remanded for the WCJ to determine the penalty. On December 16, 2016, the WCJ issued a decision and awarded no penalties to Claimant. Employer appealed from the WCJ's decision to the Board, asking the Board to reconsider its August 24, 2016 decision or make it final pursuant to *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282 (Pa. Cmwlth. 2000).[4] On August 17, 2017, the Board made its August 24, 2016 decision final and appealable. Employer appealed to this Court.[5]

---

[4] The *Shuster* Court clarified that because a Board decision remanding a matter to the WCJ is not an appealable final order, after the WCJ's remand decision, "[t]he party can [] file a motion with the Board requesting that the Board make its previous order final." *Id.* at 1287.

[5] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

Initially, Section 406.1 of the Act[6] provides, in relevant part:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable [(NCP)] as provided in [S]ection 407 [of the Act[7]] or pursuant to [an NTCP] as set forth in subsection (d), on forms prescribed by the [D]epartment [of Labor and Industry (Department)] and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum. Any payment of compensation prior or subsequent to an agreement or [NCP] or [] [NTCP] or greater in amount than provided therein shall, to the extent of the amount of such payment or payments, discharge the liability of the employer with respect to such case.

. . . .

(d)(1) **In any instance where an employer is uncertain whether a claim is compensable under [the Act] or is uncertain of the extent of its liability under [the Act], the employer may initiate compensation payments without prejudice and without admitting liability pursuant to [an NTCP] as prescribed by the [D]epartment**.

(2) The [NTCP] shall be sent to the claimant and a copy filed with the [D]epartment and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the [NTCP]. The [D]epartment shall, upon receipt of [an NTCP], send a notice to the claimant informing the claimant that:

(i) the payment of temporary compensation and the claimant's acceptance of that compensation **does not mean the claimant's employer is accepting responsibility** for

---

[6] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

[7] 77 P.S. § 731.

4

the injury or that a compensation claim has been filed or commenced;

(ii) **the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation**; and

(iii) the claimant may need to file a claim petition in a timely fashion under [S]ection 315 [of the Act], enter into an agreement with his employer or receive [an NCP] from his employer to ensure continuation of compensation payments.

(3) Payments of temporary compensation shall commence and the [NTCP] shall be sent within the time set forth in clause (a).

(4) **Payments of temporary compensation may continue until such time as the employer decides to controvert the claim**.

. . . .

(6) If the employer does not file a notice under paragraph (5)[8] within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to [an NCP].

77 P.S. § 717.1 (emphasis added). Pursuant to Section 121.7a(c) of the Bureau's Regulations:

> **To modify** [an **NTCP**], Form LIBC-501, **an employer shall file an amended** [**NTCP**], Form LIBC-501, with the Bureau during the 90-day temporary compensation payable period. The amended [NTCP], Form LIBC-501, shall be clearly identified as 'Amended' and may have only the insurer's signature.

---

[8] Paragraph 5 refers to the timing, content and effect of NSTCP notices. *See* 77 P.S. § 717.1(5)(i), (ii), (iii).

34 Pa. Code § 121.7a(c) (emphasis added). Under Section 121.17(b) of the Bureau's Regulations:

> Termination, suspension, modification or other change in compensation may be accomplished by filing with the Bureau a Supplemental Agreement for Compensation for Disability or Permanent Injury, Form LIBC-337. **A Supplemental Agreement for Compensation for Disability or Permanent Injury,** Form LIBC-337, **may be used to change an** *Agreement for Compensation* **for Disability or Permanent Injury**, Form LIBC-336, **a** *Supplemental Agreement for Compensation* **for Disability or Permanent Injury**, Form LIBC-337, an *Agreement for Compensation for Death*, Form LIBC-338, *a Notice of Compensation Payable*, Form LIBC-495, or an award. . . .

34 Pa. Code § 121.17(b) (bold and italic emphasis added). Finally, Section 407 of the Act states:

> On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under [the Act] . . . .
>
> Where payment of compensation is commenced without an agreement, the employer or insurer shall simultaneously give [an NCP] to the employe or his dependent, on a form prescribed by the [D]epartment, identifying such payments as compensation under [the Act] and shall forthwith furnish a copy or copies to the [D]epartment as required by rules and regulations. . . .
>
> **All** [**NCPs**] **and agreements for compensation and** *all supplemental agreements for the modification, suspension, reinstatement, or termination thereof*, and all receipts executed by any injured employe of whatever age, or by any dependent to whom compensation is payable under [Section 307 of the Act, 77 P.S. § 561], and who has attained the age of sixteen years, **shall be valid and binding** unless modified or set aside as hereinafter provided.

77 P.S. § 731 (bold and italic emphasis added).

6

Employer argues the Board erred by concluding that the issuance of Supplemental Agreements during a period in which Employer was paying WC benefits pursuant to an NTCP acted as an admission of liability for the alleged work-related injury. This case is not the first time this Court has been faced with such an issue. The dispute with respect to whether a supplemental agreement filed between an NTCP and the NSTCP and NCD converts the NTCP to an NCP, appears to have arisen because of the conflict between this Court's binding precedent in *Gereyes v. Workers' Compensation Appeal Board (New Knight, Inc.),* 793 A.2d 1017 (Pa. Cmwlth. 2002), and Section 121.7a(c) of the Bureau's Regulations, 34 Pa. Code § 121.7a(c), later adopted in 2007.

In *Gereyes,* it was undisputed that the employer paid the claimant temporary compensation pursuant to an NTCP from April 11, 1999 until June 29, 1999. On June 29, 1999, the employer sent the claimant an NSTCP and an NCD within the 90-day period in conformance with the Act. This Court held that in stopping temporary compensation and denying liability, the employer complied with the Act, and the NTCP was not converted to an NCP. However, the *Gereyes* Court ruled that the employer violated the Act when it unilaterally reduced the amount of compensation paid pursuant to the NTCP when the claimant returned to work. Accordingly, although Section 121.7a(c) of the Bureau's Regulations **now** requires an employer to file an amended NTCP with the Bureau during the 90-day temporary compensation payable period to modify an NTCP, it appears employers are filing supplemental agreements to comply with *Gereyes.*

In the instant case, the Board opined in support of its conclusion that the Supplemental Agreements were admissions of liability:

> Commonwealth Court has held that pursuant to the terms of the Act, supplemental agreements are valid and binding unless properly modified or set aside. *Sharon Tube Co. v.*

7

> [*Workers' Comp. Appeal Bd.*] *(Buzard)*, 908 A.2d 929 (Pa. Cmwlth. 2006).
>
> **A[n] [NCP], like a compensation agreement, constitutes an employer's admission of liability** relating to 'the claimant's employment, the occurrence of the accident, and the nature of the injuries caused by the accident while the claimant was in the employ of the employer.' *Beissel v.* [*Workers' Comp. Appeal Bd.*] *(John Wanamaker, Inc.*), 465 A.2d 969, 972 (Pa. 1983).

August 24, 2016 Board Op. at 3-4 (emphasis added). The Board's reliance on *Sharon Tube* is misplaced. In *Sharon Tube,* the supplemental agreement at issue was filed to modify benefits payable pursuant to a WCJ's award. The Court held that under Section 407 of the Act, the supplemental agreement was binding. However, NTCPs are not included in Section 407 of the Act. Section 407 of the Act expressly refers to "[NCPs,] agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination **thereof**[.]" *Id.* (emphasis added). NCPs and agreements for compensation are express acceptances of liability. Similarly, a WCJ's award is a determination of liability. An NTCP, conversely, is an explicit non-acceptance of liability. Because the Supplemental Agreements in the instant case were entered into to modify an **NTCP** on the basis of Claimant's return to work, *Sharon Tube* is inapplicable.

Similarly, the Board's reliance on *Beissel* is misplaced. The *Beissel* Court held that an NCP filed by an employer who had an opportunity to and did, in fact, investigate the cause of an employee's disability, constituted an admission of the employer's liability and operated to preclude the employer, under the guise of a termination petition, from later litigating that which the employer admitted in its NCP. Here, Employer did not file an NCP or an Agreement of Compensation, nor did it in any way accept liability. Rather, Employer filed an NTCP which is clearly provisional. Accordingly, *Beissel* is also inapposite.

8

In the instant matter, the Supplemental Agreements do not admit liability for Claimant's alleged work injury, and there is nothing in the Act that requires this Court to interpret them otherwise. Further, the Supplemental Agreements specifically provide: "The modification is based upon [] Claimant's medical release to return to work by h[er] treating physician and [E]mployer making those hours available to her." R.R. at 215a, 217a. As the Supplemental Agreements were filed merely to document the change in Claimant's WC benefits based on her return to work, this Court holds they were not admissions of liability and, thus, Employer is not bound by the injury descriptions therein. Accordingly, the Board erred by concluding that the Supplemental Agreements represented Employer's admission of liability for Claimant's alleged work-related injury.

Notably, this Court addressed a similar issue in *Frank Martz Coach Company v. Workers' Compensation Appeal Board (Avila)* (Pa. Cmwlth. No. 1555 C.D. 2015, filed April 13, 2017), wherein, this Court vacated the Board's order and remanded for development of the record because "[t]he intentions of either [c]laimant or [e]mployer cannot be discerned solely from the Supplemental Agreement." *Id.*, slip op. at 11. Specifically, the Court noted that the Supplemental Agreement in that case stated:

> as fact, that 'it is now hereby agreed between parties hereto that the status of the disability of the said employee changed' on February 28, 2013. R.R. 5a. An 'x' is placed before 'Recurred.' *Id*. The Supplemental Agreement states that [c]laimant will be paid $824.84 per week beginning on February 28, 2013, and then recites:
>
> > *Compensation* payable for ___UNK ___weeks ___days; or if the future period of disability is uncertain, then *to continue at said rate until further changed by supplemental agreement, final receipt, or order of a Workers' Compensation Judge, or the Workers' Compensation Appeal Board.*

9

*Id.* (emphasis added).

*Frank Martz*, slip op. at 9.[9]  Based on the above language and the fact that the issue was not argued before the Referee, the Court could not determine whether the Supplemental Agreement was in lieu of an amended NTCP or an Agreement for Compensation, and thus, remanded for an evidentiary hearing.  Because there is no doubt that the purpose of the Supplemental Agreements in the instant case was to document the change in earnings based on Claimant's return/release to work, *Frank Martz* is distinguishable.

Herein, the evidentiary record establishes that the Supplemental Agreements simply documented the change in earnings based on Claimant's return/release to work; they did not accept liability.  They were not intended to function as an Agreement for Compensation.  The Bureau's Regulations are clear that Supplemental Agreements are to be used "to change an *Agreement for Compensation* for Disability or Permanent Injury, Form LIBC-336, a *Supplemental Agreement for Compensation* for Disability or Permanent Injury, Form LIBC-337, an *Agreement for Compensation for Death*, Form LIBC-338, a *Notice of Compensation Payable*, Form LIBC-495, or an award[,]" 34 Pa. Code §121.17(b) (emphasis added), and "an amended [NTCP]" is to be used "[t]o modify [an NTCP], Form LIBC-501[.]"  34 Pa. Code §121.7a(c).  Thus, **when modifying an NTCP for any reason other than accepting liability, the proper filing is an amended NTCP.**  Notwithstanding *Gereyes*, which preceeded the Board's Regulation, documenting a change in the rate of compensation during the 90-day temporary compensation period without accepting liability, does **not** require the employee's agreement.  If a claimant disputes the terms of the amended NTCP for any reason, a claimant may file a review petition with the

---

[9] In both cases, the parties used the Bureau's pre-printed Supplemental Agreement form. However, the information completed on the forms were different in the two cases.

Bureau.  Accordingly, an employer does not violate the Act by unilaterally filing an amended NTCP as required by the Board's Regulation.

Here, Employer did not violate the Act by following this Court's construction of the Act as set forth in *Gereyes*.  The Board erred in modifying the WCJ's decision in this regard.  The Supplemental Agreements were not necessary given the Bureau's post-*Gereyes* Regulation that created the amended NTCP, but Employer did not use them unlawfully or alter its non-acceptance of liability.  Therefore, the Board's decision on this issue is reversed.

Employer also contends that the Board erred by failing to conclude that Employer's timely filing of an NSTCP and an NCD preserved all of Employer's rights, defenses and obligations with respect to the underlying claim.  Specifically, the Board found that because Employer filed two Supplemental Agreements after it filed its NTCP, the NTCP converted to an NCP, thus, Employer violated the Act when it filed its NSTCP and NCD, and stopped paying Claimant.

Section 406.1(5)(iii) of the Act expressly provides:

> If the employer ceases making payments pursuant to  [an NTCP], [after timely filing the appropriate notices], **the employer** and employe **retain all** the **rights**, **defenses** and obligations **with regard to the claim subject to the** [**NTCP**], and the payment of temporary compensation may not be used to support a claim for compensation.

77 P.S. § 717.1(5)(iii) (emphasis added).  Because the Supplemental Agreements in this case were not admissions of liability, and Employer timely filed its NSTCP and NCD, this Court holds that Employer retained all of its rights and defenses with respect to the underlying claim.

Lastly, Employer asserts that the Board erred by concluding that Dr. Mauthe's credible testimony was not substantial, competent evidence to support the termination of Claimant's WC benefits.  Specifically, the Board opined:

11

> [I]n order to be entitled to a termination of Claimant's benefits, [Employer] bore the burden of establishing that her entire work injury had fully ceased. While [Employer] presented the medical testimony of Dr. Mauthe, he only opined that Claimant was fully recovered from a lumbar strain work injury. The [WCJ] also only found his testimony credible to establish the fact Claimant had fully recovered from a lumbar strain. However, as stated earlier, we have determined that Claimant's work injury included both 'left sacroiliitis sprain' and 'left leg sprain' pursuant to the binding Supplemental Agreements. Thus, [Employer] bore the burden of proving Claimant was also fully recovered from those aspects of her work injury to be entitled to a termination.

August 24, 2016 Board Op. at 7 (citation omitted).

However, this Court observes that the WCJ only referred to Claimant's lumbar strain because the WCJ properly determined that the Supplemental Agreements were not binding. Thus, Claimant's injury did not include both left sacroiliitis sprain and left leg sprain, but rather, only the injury listed on the NTCP, *i.e.*, the lumbar strain. Notwithstanding, Dr. Mauthe testified:

> Q. [Employer's Counsel] Based on your exam, could you find anything objectively wrong with her?
>
> A. [Dr. Mauthe] As it would pertain to any injury sustained on 4/23/14, **there's no objective evidence of ongoing pathology that I can relate to <u>any</u> work-related injury**.[10]
>
> Q. The same thing with your review of the materials that we sent to you and the materials you reviewed before testifying today: Can you find anything objectively wrong with her as it may relate to any alleged work-related incident on April 23, 2014?
>
> A. Assuming she strained her back on April 23, 2014, it's my opinion that **there's no longer any evidence of a sac --**

---

[10] Because Dr. Mauthe had read the medical records and deposition of Claimant's current treating neurologist Daniel Skubick, M.D. (Dr. Skubick) prior to his testimony, Dr. Mauthe was aware of Dr. Skubick's "left leg pain" diagnosis.

**of a <u>lumbar strain</u> or a <u>sacroiliac strain</u>.** There's just no focal evidence of impairment. . . .

R.R. at 124a (bold and underline emphasis added). Clearly, because this testimony is substantial, competent evidence to support the termination of Claimant's WC benefits, the Board erred by concluding otherwise.

For all of the above reasons, the Board's order is reversed.


_____
ANNE E. COVEY, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LifeQuest Nursing Center,       :
                  Petitioner   :
                           :
            v.               :
                           :
Workers' Compensation Appeal   :
Board (Tisdale),            :    No. 1250 C.D. 2017
                 Respondent  :

## O R D E R

AND NOW, this 19th day of July, 2018, the Workers' Compensation Appeal Board's August 24, 2016 order is reversed.

_____
ANNE E. COVEY, Judge