## Commonwealth v. Bohn

*Rosamond A. Presby,* assistant district attorney, for the Commonwealth.

*Bradford H. Charles,* for defendant.

GATES, *P.J.,* September 23, 1985—Henry M. Bohn is charged in a criminal complaint with violating several sections of Pennsylvania's Bingo Law, 10 P.S. §301 et seq. Defendant was arraigned on June 4, 1985 and a timely omnibus pretrial motion to quash the criminal information was filed on July 1, 1985. A hearing was scheduled on August 6, 1985. At the hearing, the following pertinent facts were stipulated and agreed upon by the parties.

On March 5 and 8, 1985, Lebanon County Detective Edward Kline went to the Ark Recreation Center in Swatara Township, Lebanon County, Pa. to investigate reported violations of Pennsylvania's Bingo Law. On both occasions he saw defendant Henry Bohn conducting bingo games in the name of the Jonestown Athletic Association. Bohn was not an officer of the association, nor did he have a license to conduct the bingo games. A bingo license number 157 was issued on November 6, 1984 upon the application of Robert Sutherly, treasurer to the Jonestown Athletic Association. Henry Bohn was at

the time of the alleged offense a member of the Association.

Detective Kline's investigation disclosed that on both days Bohn had people helping him conduct bingo. These individuals were not members of the Jonestown Athletic Association. Bohn paid these people in cash without the issuance of a written receipt. Further, there was no written lease in effect for either the premises or the personal property used to conduct the bingo games. No written records were kept of monies and merchandise collected and distributed on either date. No deposit was made of the bingo proceeds from either date by defendant or by the Jonestown Athletic Association, with a financial institution into an account in the association's name.

Defendant wants to quash the information on two separate and independent grounds. First, Bohn contends that he cannot be convicted of violating the Bingo Law because the law imposes duties and criminal responsibilities solely upon an "association."

A basic tenet of our criminal law is that penal statutes are to be strictly construed. The Bingo Law expresses this in section 302 where it is announced that:

". . . the policy of the Legislature that all phases of licensing, operation and regulation of the game of bingo be strictly controlled, and that all laws and regulations with respect thereto as well as all gambling laws should be strictly construed and rigidly enforced."

Strict construction is required in order that we not create offenses which the legislature did not intend to create. Additionally, strict construction protects against giving a penal law such breadth of application that it is rendered unconstitutionally

vague. The statute is unconstitutionally vague if it is unclear with respect to either the person subject to prosecution, the conduct that is forbidden or the punishment that follows a transgression. The meaning of strict construction has been expressed more clearly as follows:

"Strict construction is a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalty and what the penalties would be." 3 Sutherland Statutory Construction, section 59.03 (4th ed. 1974)

Notwithstanding this limitation on our construction of the Bingo Law of Pennsylvania, we agree with the Commonwealth that defendant clearly falls within its proscription. The act provides, in pertinent part as follows:

"§305. Rules for Licensing and Operation.

. . .

"(c) Operation.—Each licensed association shall comply with the following restrictions and rules governing the operation of bingo; . . .

"(6) The association shall own both the premises upon which bingo is played and the personal property used in the conduct of the game, or if it does not, the association shall sign a written agreement leasing such premises or personal property from the owner thereof for a fee which is not determined by either the amount of receipts realized from the playing of bingo or the number of people attending bingo games. An association shall not lease such premises or personal property from any person who has been convicted of a felony or a violation of this act.

"(7) Each association shall keep written records of the moneys and merchandise collected and distributed for each day they conduct bingo. These records shall indicate the total proceeds collected, the total prize money distributed, the total value of all merchandise awarded as a prize and the amount of moneys paid as rentals or wages and to whom such rentals or wages were paid. All prizes awarded having a value greater than $250 shall be specifically described in the association's records.

"(8) Each association shall deposit with a financial institution all proceeds for each day's bingo game in an account in the association's name. This deposit shall be made before any of the proceeds may be used for any other purpose, except for payment of prize money and compensation to members employed in the operation of the game.

"(9) No association shall permit any person who is not a bona fide member of the association or who has been convicted of a felony or a violation of this act to manage, set up, supervise or participate in the operation of the association's bingo games. Nothing contained in this act shall be construed to prohibit individuals under 18 years of age from participating in the operation of the game and being compensated therefor if written permission is obtained from their parent or guardian.

. . .

"(e) Limitation on compensation.—No person may be employed in the operation or the actual running of a bingo game for compensation greater than $50 per day, except employees of outside operators under section 5(c)(10), and any person compensated shall be paid individually by check or by cash, in which case the payee shall sign a written receipt therefor. In addition, no person shall receive com-

pensation from more than one source for services rendered in the operation of a bingo game."

At first blush Bohn's argument seems appealing. He claims that since he is a person and not an association he cannot be charged with violating these sections because only an association can be issued a license, sign an application and be criminally responsible for failing to abide by the rules set forth in the Bingo Statute.

An association is defined in the act in the following language:

"Association. A volunteer fire company or an ambulance, religious, charitable, fraternal, veterans, civic, county fair or agricultural association, or any separately chartered auxiliary of any of the above associations, organized as a non-profit organization which shall have existed, or conducted business in furtherance of their written constitution, charter, articles of incorporation or by-laws express purposes, for two years prior to the application for license; provided, however, that an association whose membership consists exclusively of elderly residents of a senior citizens housing project may apply for a license immediately upon its being organized as such and need not meet the two year waiting requirement. This term shall not be interpreted to include political organizations as associations eligible for bingo license. An association shall not be denied a bingo license because it's name denotes affiliation with a political organization if in fact the association is not a political association as evidenced by its written constitution, charter, articles of incorporation or by-laws express purpose." 10 P.S. §303.

Thus if we interpret the act without reading it in its entirety there would be merit to defendant's contention. But the legislature obviously intended to prohibit the described acts. An association is a con-

cept and must of necessity act through people. Certainly the legislature did not intend that people could perform the prohibited acts in the name of the association and defend by arguing that only the association was prohibited from so acting and not the people. When the penalty provisions of the Bingo Law are read in conjunction with the entire statutory scheme, defendant's argument disappears. Section 307 of the Bingo Law provides, in pertinent part as follows:

"(b) Misdemeanor.—Any person who conducts or assists in the conducting of bingo in violation of the provisions of this Act is guilty of a misdemeanor of the first degree. . . ."

Thus we conclude that the legislature clearly intended that any person who individually conducts a bingo game or assists anyone else, including an association, in conducting a bingo game in violation of the provisions of the act is guilty of a misdemeanor.

We must assume that the legislature was genuine in its concern to regulate the gambling aspects of bingo and prohibit acts which could lead to commercial gambling and invite organized crime to commercialize the game of bingo. It intended to punish the persons involved in and with the "association" which was either unlicensed or, if licensed, committed the acts prohibited by sections 6, 7, 8 and 9 of section (c) and subsection (e).

We conclude that the legislature intended the act to apply to factual situations as posed in this case.

The second prong of defendant's argument is that Pennsylvania's Bingo Law is unconstitutionally vague. We disagree.

There is a strong presumption in favor of the constitutionality of the acts of the legislature. The burden is on the party seeking to challenge a statute on grounds that it is unconstitutional. A statute will be

declared unconstitutional only if it clearly, palpably and plainly violates either the Federal Constitution or the Constitution of the Commonwealth of Pennsylvania. Commonwealth v. Finnegan, 280 Pa. Super. 584, 421 A.2d 1086 (1980); In the Interest of Jones, 286 Pa. Super. 574, 429 A.2d 671 (1981).

We conclude from the foregoing analysis that Pennsylvania's Bingo Law gives a clear and unequivocal warning in language that folks generally understand what acts expose them to liability for penalties and what those penalties are. We do not find the Pennsylvania Bingo Law unconstitutional. Thus, we will dismiss the pretrial motions.

## ORDER OF COURT

And now, September 23, 1985, defendant's pretrial motion to quash is denied.