IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau : 
of Liquor Control Enforcement, : 
          Appellant : 
 : 
     v. : No. 550 C.D. 2016
 : Argued: April 20, 2017
Legion Post 304 Home Association : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: June 15, 2017

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (State Police) appeal an order of the Court of Common Pleas of Carbon County (trial court) holding that Legion Post 304 Home Association (Licensee) conducted games of small chance and bingo after its licenses expired, in violation of the Local Option Small Games of Chance Act[1] and the Bingo Law.[2] In doing so, the trial court affirmed a decision of the Liquor Control Board. The trial court also affirmed the decision of the Board that "Bonanza Bingo," which was offered two days a week by Licensee, was a lawful form of bingo. The trial court remanded the matter to the Administrative Law Judge (ALJ) to impose penalties on Licensee for its license violations, and the ALJ imposed a penalty of $700. The State Police have appealed the trial court's decision that Licensee's "Bonanza Bingo" is a lawful form of bingo.

---

[1] Act of December 19, 1988, P.L. 1262, *as amended*, 10 P.S. §§328.101 – 328.915.

[2] Act of July 10, 1981, P.L. 214, *as amended,* 10 P.S. §§301-308.1.

On or about April 28, 2013, State Police Officer William J. Rosenstock, *incognito*, went to Licensee's premises, where he purchased two Bonanza Bingo tickets. The bartender explained how to play: "[T]here's a master sheet which [is] sitting at the bar. You compare your tickets … to the master sheet … and you win the corresponding … prizes." Notes of Testimony, 6/5/2014, at 33 (N.T., 6/5/2014, __); Reproduced Record at 43a (R.R. __). Officer Rosenstock played his tickets and left without winning a prize.

On August 26, 2013, Officer Rosenstock returned, this time to conduct a routine inspection. Officer Rosenstock noted that Licensee's small games of chance license, which was displayed on the wall, had expired on April 4, 2013. He also discovered that Licensee's bingo license expired on August 20, 2013. Based on information provided by Licensee, Officer Rosenstock found that Licensee had conducted small games of chance, including the Bonanza Bingo game, from April 5, 2013, through August 26, 2013.

On January 13, 2014, Officer Rosenstock issued Citation No. 13-2097 to Licensee. Count One charged violations of the Local Option Small Games of Chance Act and the Department of Revenue's implementing regulation during the period from April 5, 2013, through August 17, 2013. Count Two charged violations of the Liquor Code[3] and the Bingo Law for the period from April 28, 2013, to August 26, 2013.

At the June 5, 2014, hearing, Officer Rosenstock established the above-described narrative of the State Police investigation and citation issued to

---

[3] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

2

Licensee. Keith McQuait, commander of Legion Post 304 Home, then testified for Licensee.

McQuait explained that Licensee offers bingo games on Sundays and Tuesdays. Those who play purchase a "Bonanza Bingo" card for $1.00 each. The player compares the purchased card to the master board to determine whether he has a winning combination.

The ALJ dismissed the State Police citation in its entirety. The ALJ held that the citation was too poorly drafted to provide adequate notice and, thus, offended due process. The ALJ dismissed Count Two for the additional reason that "Licensee's method of playing bingo, however untraditional," was a lawful form of bingo. R.R. 127a.

The State Police appealed to the Liquor Control Board, which reversed the ALJ, in part. The Board concluded that the ALJ erred in dismissing the entire citation on due process grounds because Licensee did not raise that issue; it was error for the ALJ to raise the issue *sua sponte*. With respect to Count One, the Board found that Licensee had violated the Small Games of Chance Act by offering these games after its license expired. With respect to Count Two, the Board found that Licensee had violated the Bingo Law by offering Bonanza Bingo after its bingo license had expired. Finally, the Board concluded that the definition of the word "bingo" under the Bingo Law was "intentionally broad" and, as such, authorized "Bonanza Bingo." Liquor Control Board Decision, 11/19/2014, at 10. The Liquor Control Board remanded the matter to the ALJ to impose a penalty on Licensee for conducting games after its licenses had expired. The State Police requested reconsideration from the Board, but the request was denied.

3

Thereafter, the State Police appealed to the trial court, arguing that the Liquor Control Board erred in holding that "Bonanza Bingo" did not meet the definition of "bingo" in Section 3 of the Bingo Law.[4]  The trial court held a hearing.

The State Police did not offer new evidence; rather, it presented legal arguments on the meaning of "bingo."  Licensee presented testimony from McQuait, who explained the mechanics of Bonanza Bingo.  A large master board sits at one end of the bar with the word "Bingo" printed at the top.  Below each letter are five numbers (with one "free" in the middle) handwritten by the bartender.  He writes new numbers daily, which are chosen by patrons from a deck of cards and read to the bartender.  Throughout the day patrons can purchase a sealed bingo card for $1.00.  Patrons then compare the numbers on their bingo card to those posted on the master board.  If their bingo card creates a "bingo" match to the master card, they win a prize.

The trial court concluded that Bonanza Bingo met the statutory definition of "bingo."  It rejected the State Police argument that Bonanza Bingo

---

[4] It defines "bingo" as follows:

> A game in which each player has a card or board containing five horizontal rows all but the central one containing five figures.  The central row has four figures with the word "free" marked in the center thereof.  Any preannounced combination of spaces when completed by a player constitutes bingo.  In the absence of a preannouncement of a combination of spaces, any combination of five in a row whether horizontal or vertical when completed by a player constitutes bingo when its numbers are announced and covered.  A wheel or other mechanical device may be used by any person conducting the game of bingo, and any such person may award a prize to any player or players first completing any combination constituting bingo.

10 P.S. §303.

4

was more akin to a pull-tab "strip ticket" than a bingo game.[5] The trial court affirmed the Liquor Control Board's decision "*in toto*[.]" Trial Court op., 12/11/2015, at 14. The trial court remanded the matter to the ALJ for an adjudication on penalties against Licensee for conducting games after its license expired.

The State Police appealed the trial court's order to this Court. This Court quashed the appeal, for the stated reason that because the trial court had "remanded this matter for further consideration of appropriate penalties, a matter which necessarily requires the exercise of the ALJ's discretion, the notice of appeal is quashed as taken from a non-final interlocutory order." Order, 2/23/2016, at 2 (Quigley, S.J.); R.R. 277a. On remand, the ALJ issued a supplemental order imposing a $350 fine for each count for a total of $700.

Upon receipt of the ALJ's penalty decision, the State Police appealed to this Court.[6] As it did in its earlier appeal to this Court, the State Police challenged the trial court's holding that Bonanza Bingo is a lawful type of bingo. The State Police contend that the Bingo Act authorizes only traditional call bingo. Licensee argues otherwise.

---

[5] Section 103 of the Local Options Small Games of Chance Act defines "pull-tab" as:

> A single folded or banded ticket or a strip ticket or card with a face covered to conceal one or more numbers or symbols, where one or more of each set of tickets or cards has been designated in advance as a winner.

10 P.S. §328.103.

[6] On appeal, this Court's standard of review "is limited to determining whether the decision of the trial court is based on substantial evidence, and whether the trial court abused its discretion or committed an error of law." *Erie Sports Bar, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 6 A.3d 663, 666 (Pa. Cmwlth. 2010).

On May 26, 2016, this Court ordered the parties to address the issue of whether the State Police appeal could be heard by this Court without it first being presented to the Liquor Control Board. Specifically, the order stated:

> [I]t appears that neither party appealed the ALJ's penalty adjudication to the Board and thereafter to the [trial court]. Accordingly, the parties shall address in their principal briefs on the merits whether the ALJ's March 23, 2016[,] adjudication is immediately appealable directly to the Commonwealth Court or must follow the statutory review process.

Order, 5/26/2016, at 2 (Friedman, S.J.) (internal citation omitted); R.R. 293a.

We begin with the jurisdictional question. The State Police contend that the trial court's December 11, 2015, order decided all substantive legal issues and remanded the matter to the ALJ solely to perform a ministerial act, *i.e.*, to set penalties. State Police Brief at 17. The State Police contend that an appeal of the ALJ's supplemental order to the Board would be burdensome, fruitless, and not in the interests of judicial economy. The Liquor Control Board has already decided the question of whether Bonanza Bingo is "bingo" under the Bingo Law. In the alternative, the State Police argue that it has a right of appeal under the Pennsylvania Rules of Appellate Procedure.

We begin with an examination of the statutory review process. Section 471(b) of the Liquor Code states, in relevant part:

> In the event the bureau or the person who was fined or whose license was suspended or revoked shall feel aggrieved by the adjudication of the administrative law judge, *there shall be a right to appeal to the board. The appeal shall be based solely on the record before the administrative law judge*. The board shall only reverse the decision of the administrative law judge if the administrative law judge committed an error of law, abused its discretion or if its decision is not based on substantial

6

evidence. In the event *the bureau or the person* who was fined or whose license was suspended or revoked *shall feel aggrieved by the decision of the board, there shall be a right to appeal to the court of common pleas* in the same manner as herein provided for appeals from refusals to grant licenses.

47 P.S. §4-471(b) (emphasis added). The trial court hears the appeal of the Liquor Control Board's decision *de novo*; it makes its own findings of fact and conclusions of law. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Capek*, 657 A.2d 1352, 1353 n.3 (Pa. Cmwlth. 1995). Accordingly, the trial court can "sustain, alter, change, modify or amend the Board's action whether or not it made findings which are materially different from those found by the Board." *Id.*

The State Police direct this Court to *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Kenrich Athletic Club, License No. C-1927*, 49 A.3d 13 (Pa. Cmwlth. 2012). In that case, the ALJ found that the licensee had violated the Liquor Code and imposed a fine and a license suspension of 14 days. The ALJ deferred setting dates for suspension; the licensee did not appeal the ALJ's adjudication. Several weeks later, the ALJ issued a supplemental order setting the period of suspension. The licensee then requested an accommodation so that it could hold a previously scheduled major event. At the time of this request, the licensee had served four days of suspension. The ALJ granted the request and thereafter entered a second order scheduling the remainder of the licensee's suspension.

The licensee appealed the ALJ's second order to the Liquor Control Board, which appeal automatically stayed the ALJ's order.[7] The licensee

---

[7] Section 471(b) of the Liquor Code states:

**(Footnote continued on the next page . . .)**

7

contended that the ALJ was obligated to give it 45 days advance notice of the suspension period. The Liquor Control Board rejected this argument and remanded the matter to the ALJ to set new dates for the remaining 10 days of suspension. The licensee appealed to the trial court, which denied the appeal. The ALJ then ordered new dates for the suspension period.

The licensee again appealed to the Liquor Control Board. It argued that under the Liquor Code, the ALJ was required to give the licensee at least 30 days advance notice of the suspension period. The Board agreed and remanded the matter to the ALJ to set yet another suspension schedule, and the ALJ did so.

The State Police appealed the ALJ's final adjudication directly to this Court. It argued that it could bypass the Liquor Control Board and appeal directly to this Court because the trial court's remand order to the ALJ had been a final order.

We agreed and allowed the direct appeal. We held that the ALJ's setting the new period of suspension was not itself an adjudication. We reasoned as follows:

> [The ALJ's] Order on Remand only set new dates of suspension to effect the unexpired term of the fourteen (14) day suspension set forth in the unappealed Adjudication.... Licensee unquestionably had the right to appeal the Adjudication to the Board and challenge the ALJ's suspension decision. But it did not. *Once that thirty-day appeal period expired, the ALJ was free to set the dates of suspension in accordance with the penalty set forth in the unappealed Adjudication*, and Licensee

---

**(continued . . .)**

    Each of the appeals shall act as a supersedeas unless, upon sufficient cause
    shown, the reviewing authority shall determine otherwise….
47 P.S. §4-471(b).

had *no* right to particular dates of its choosing. *The subsequent ministerial act by an ALJ of implementing/enforcing an unappealed adjudication is not also an adjudication appealable to the Board.* In this case, the [trial court's] Order on Remand was such a ministerial act by the ALJ, performed at the direction of the trial court, and thus based on a proceeding before the trial court.

Because the Order on Remand was not an adjudication, the Licensee could not appeal it to the Board.... We, therefore, affirm the trial court and remand this matter to the trial court with direction that the trial court set dates of suspension for the unexpired term of the fourteen-day suspension period set forth in the Adjudication.

*Kenrich Athletic Club*, 49 A.3d at 20 (internal footnotes omitted) (emphasis added).

We return to the procedural history of this case. When the State Police initially appealed the trial court's order remanding the matter to the ALJ to set penalties, we quashed the appeal. We held that the State Police had appealed an interlocutory order and observed that the ALJ's "consideration of appropriate penalties [was] a matter which necessarily requires the exercise of the ALJ's discretion[.]" Order, 2/23/2016, at 2 (Quigley, S.J.); R.R. 277a. We noted that the exercise of discretion by the ALJ on remand distinguished this case from *Kenrich Athletic Club*. One of the parties might want to challenge the penalty amount and, if so, that needed to be heard by the Liquor Control Board before being appealed to this Court. In this way, all issues in this case, whether concerning the penalty amount or the metaphysics of "bingo," could be decided in a single appeal to this Court.

However, here, neither party has challenged the ALJ's penalty decision; accordingly, the adjudication became final. 47 P.S. §4-471(b)

9

("Suspensions and revocations shall not go into effect until thirty days have elapsed from the date of the adjudication during which time the licensee may take an appeal as provided for in [the Liquor Code]"); *Kenrich Athletic Club*, 49 A.3d at 19 (licensee did not appeal the ALJ's adjudication and, thus, waived the right to challenge it). In short, the ALJ's penalty of $700 is beyond review, even by the Liquor Control Board, because neither party appealed it.

With regard to the issue of the legality of the game of Bonanza Bingo, the State Police argue that an appeal to the Liquor Control Board on that issue would be futile. The Liquor Control Board and the trial court have each held that the game of Bonanza Bingo was lawful, and it is unlikely that another review, by either tribunal, would yield a different result. State Police Brief at 20. We agree, but for different reasons. Even if the Liquor Control Board "changed its mind" on whether Bonanza Bingo is lawful under the Bingo Law, it cannot issue a new ruling on that legal issue because it has been decided by the trial court. The Liquor Control Board cannot overrule the trial court. Stated otherwise, the Liquor Control Board lacks jurisdiction over the single issue that is the subject of the State Police's appeal to this Court, *i.e.*, whether Bonanza Bingo is a lawful form of bingo. Therefore, the State Police's appeal to our Court on the issue of the legality of the game of Bonanza Bingo is appropriate.[8]

---

[8] In *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282 (Pa. Cmwlth. 2000), we addressed the appealability of a remand order issued in a workers' compensation proceeding. In *Shuster*, the Workers' Compensation Appeal Board remanded a matter to a Workers' Compensation Judge for a determination of the reasonableness of attorneys' fees. The claimant appealed the Board's remand order to this Court. We concluded that the WCJ had to decide the fee question before the Board's order could be reviewed by this Court.

This matter is different from *Shuster* and has no impact on our *Shuster* jurisprudence. The process is different for Liquor Code proceedings. Once the trial court decides the legal question,

**(Footnote continued on the next page . . .)**

10

We next turn to the merits of the State Police's appeal. The State Police argue that the trial court erred in holding that Licensee's game of Bonanza Bingo was permitted under the Bingo Law. It contends that Section 3 of the Bingo Law "describes the game of 'traditional bingo' that has been played in Fire Halls and Church Halls for decades." State Police Brief at 21. It contends that Bonanza Bingo is not traditional bingo but more akin to a pull-tab, strip-ticket game. Licensee pre-draws numbers at the beginning of the day and places those numbers on a master card. Players do not have to be present when the numbers are drawn; cards can be purchased throughout the day; and if none of the cards sold that day match the numbers on the master card, there is no winner that day. Licensee responds that the statute authorizes types of bingo games other than "traditional" bingo. Licensee Brief at 4.

Section 4 of the Bingo Law permits licensed nonprofit associations, such as Licensee, to conduct "the game of bingo as herein defined" for the promotion of charitable or civic purposes.[9] 10 P.S. §304. The Bingo Law defines "bingo" as follows:

> A game in which each player has a card or board containing five horizontal rows all but the central one containing five figures. The central row has four figures with the word "free" marked in the center thereof. *Any preannounced combination of spaces when completed by a player constitutes bingo.* In the

---

**(continued . . .)**
the agency lacks jurisdiction over that question. Here, Licensee did not challenge the penalty ordered on remand.

[9] Section 4 states:

> Any association, for a charitable or civic purpose, when licensed pursuant to this act, may conduct the game of bingo as herein defined.

10 P.S. §304.

absence of a preannouncement of a combination of spaces, any combination of five in a row whether horizontal or vertical when completed by a player constitutes bingo when its numbers are announced and covered. A wheel or other mechanical device *may be used* by any person conducting the game of bingo, and any such person may award a prize to any player or players first completing any combination constituting bingo.

10 P.S. §303 (emphasis added). When operating bingo games, associations are required to comply with certain rules, including:

(2) No association shall conduct bingo more than twice in any one week, except an association shall be permitted to conduct the game of bingo for a period not to exceed ten days at the association's exposition, carnival or fair site in addition to the regularly scheduled games.

(3) Prizes awarded shall not exceed a value of $250 for any one game of bingo, except for jackpot games which shall not exceed a value of $2,000 for one such game. In addition, no more than $4,000 in prizes shall be awarded in any calendar day.

\* \* \*

(5) The association shall own the equipment used in playing bingo or shall sign a written agreement leasing the equipment from another licensed association for a fee….

Section 5(c) of the Bingo Law; 10 P.S. §305(c).

With respect to construction of the Bingo Law, the General Assembly has directed "*that all phases of licensing, operation and regulation of the game of bingo be strictly controlled*, and that all laws and regulations with respect thereto as well as all gambling laws should be strictly construed and rigidly enforced." Section 2 of the Bingo Law; 10 P.S. §302 (emphasis added). In *Commonwealth v. Bohn*, 36 Pa. D. & C. 3d 405, 406 (C.C.P. Lebanon 1985), the Court of Common

Pleas of Lebanon County stated, "[a] basic tenet of our criminal law is that penal statutes are to be strictly construed" and "[t]he Bingo Law expresses this in [S]ection []2." This is so lest we "create offenses which the legislature did not intend to create." *Id*.

The rules of statutory construction require that courts, whenever possible, give each word in a statutory section meaning and not treat any word as surplusage. 1 Pa. C.S. §1921(a) ("[e]very statute shall be construed, if possible, to give effect to all of its provisions"). In *Fumo v. Hafer*, 625 A.2d 733, 735 (Pa. Cmwlth. 1993), we explained:

> The primary method of determining the meaning of a statute is simply to look at the plain and unambiguous meaning of the statute as written by the legislature. However, where the meaning of a statute is not clear, courts may look to other factors, i.e., the consequences of a particular interpretation, in determining legislative intent. In interpreting statutes, courts may also consider two statutes involving the same subject and construe the statutes in harmony if possible.

(internal citations omitted). With these principles in mind, we turn to the meaning of "bingo."

Section 3 of the Bingo Law contemplates two types of bingo: (1) a game where a "preannounced combination" of spaces are used, and (2) a game which does not use a "preannounced combination" of spaces but a combination of five numbers in a row.[10] Bonanza Bingo uses a *"preannounced combination of*

---

[10] In the second type of game, "a combination of five in a row whether horizontal or vertical when completed by a player constitutes bingo when the numbers are announced and covered." 10 P.S. §303.

*spaces*" because patrons are notified, prior to purchasing a bingo card, of the combinations of spaces needed to win. R.R. 111a. As the trial court observed:

> On the periphery of this master card are eighteen (18) different preannounced combinations of spaces when completed by a player would constitute bingo. This master card further explains that if a player was fortunate enough to "have" any one or more combination[s], [that player] will win that corresponding monetary prize or prizes.
>
> Any player who desires to play this game purchases a sealed card. [The player is] then tasked with comparing the numbers on [his] respective game boards with the number on the master card. If [his] numbers match any of the preannounced combinations outlined on the master card: BINGO, [THE PLAYER] WIN[S]!

Trial Court op., 12/11/15, at 12.

The definition of "bingo" states that "[a] wheel or other mechanical device *may* be used by any person conducting the game of bingo and any such person may award a prize to any player or players first completing any combination constituting bingo." 10 P.S. §303 (emphasis added). The statute does not mandate the use of a wheel or mechanical device to choose numbers. Licensee uses a deck of cards to select the numbers, which is not a forbidden methodology. Section 3 states that the licensee "*may* award a prize to any player or players first completing any combination constituting bingo." 10 P.S. §303 (emphasis added). It does not require a prize or that there be a winner.

Under the Small Games of Chance Act, the term "pull-tab" is defined as, "[a] single folded or banded ticket or a strip ticket or card with a face covered to conceal one or more numbers or symbols, where one or more of each set of tickets or cards has been designated in advance as a winner." 10 P.S. §328.103. In

14

a pull-tab game, each ticket is pre-printed to be a winner or a loser. The chance of winning "shall not be made contingent upon any other occurrence or the winning of any other contest, but shall be determined solely at the discretion of the purchaser." *Id.* We reject the State Police argument that Bonanza Bingo meets the definition of a pull-tab game of chance.

Unlike a pull-tab game, Bonanza Bingo does not have a pre-determined winner; that depends on the master card. In addition, unlike a pull-tab ticket, when the player opens a Bonanza Bingo ticket he does not know immediately whether he has won or lost. Rather, the player must "play" the game by comparing the numbers on the master card with the numbers appearing on his Bonanza Bingo card, as a player must do when bingo is played in the more traditional announced form. Licensee's Bonanza Bingo, albeit atypical, meets the statutory definition of "bingo."

For these reasons, we affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau : <br>
of Liquor Control Enforcement, : <br>
        Appellant : <br>
          : <br>
       v. :   No. 550 C.D. 2016 <br>
          : <br>
Legion Post 304 Home Association : <br>

## **O R D E R**

AND NOW, this 15th day of June, 2017, the order of the Court of Common Pleas of Carbon County dated December 11, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge