IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,   :
                     Petitioner   :
                                      :
        v.                  : No. 649 C.D. 2023
                                      : Submitted: July 5, 2024
Amato Berardi (Workers'         :
Compensation Appeal Board),     :
                     Respondent   :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                FILED: September 20, 2024

The Pennsylvania Liquor Control Board (Employer) petitions for review of the May 22, 2023 order of the Workers' Compensation (WC) Appeal Board (Board) to the extent it affirmed the Workers' Compensation Judge's (WCJ) September 27, 2022 order granting Amato Berardi's (Claimant) Petition to Reinstate Compensation Benefits (Reinstatement Petition), Petition to Review Compensation Benefits (Review Petition), and two Petitions for Penalties (Penalty Petitions). Upon review, we affirm.

## I.     Background

Claimant worked for Employer as a clerk at a Pennsylvania Fine Wine and Good Spirits store, where he primarily stocked shelves and assisted customers. Reproduced Record (R.R.) at 7a. On June 29, 2019, Claimant tripped over a cement barrier and fell on his right knee and right elbow when returning to work from lunch.

*Id.* at 8a, 11a. Claimant continued to work from June 29, 2019, to July 11, 2019, with worsening right knee pain. *Id.* at 8a. Employer placed Claimant on modified-duty employment from July 11, 2019, to July 20, 2019. *Id.* Even though no doctor advised him against working, Claimant stopped working after July 20, 2019. *Id.* Claimant underwent surgery on his right knee on October 10, 2019. *Id.* Claimant then returned to work in a modified-duty capacity, pursuant to a release signed by his surgeon (Dr. Katzman), on November 8, 2019. *Id.* at 11a.

On August 3, 2020, Employer sent Claimant a letter indicating he was entitled to a period of six months of modified-duty employment, which would expire on August 25, 2020.[1] *Id.* at 194a. The letter explained Claimant would "not be allowed to work beyond August 25, 2020[,] . . . unless [his] physician release[d him] to perform full duties by this date." *Id.* (emphasis omitted). Claimant's physician did not release him to full duty, so Employer terminated Claimant's employment on August 25, 2020. *Id.* at 12a.

Claimant first attempted to obtain WC benefits by filing a Claim Petition on August 1, 2019, alleging he injured his right knee in the course and scope of his employment with Employer. After conducting several hearings, a WCJ issued an order on March 9, 2021, granting Claimant's Claim Petition and finding that Claimant suffered a right knee injury on June 29, 2019, during the course and scope of his employment with Employer. R.R. at 5a-18a. The WCJ awarded Claimant total disability benefits from October 10, 2019, through November 8, 2019, and partial disability benefits thereafter. *Id.* at 382a. Employer appealed the WCJ's order granting Claimant's Claim Petition to the Board and requested supersedeas. *Id.* at 389a. The Board denied Employer's supersedeas request by order dated April

_____

[1] Periods of time were excluded from the six-month limitation due to Claimant's receipt of paid administrative leave during the COVID-19 pandemic. R.R. at 194a.

28, 2021. *Id.* The Board ultimately affirmed the WCJ's order granting Claimant's Claim Petition. *See id.* at 382a. Employer appealed the Board's decision to this Court, which affirmed. *See Pa. Liquor Control Bd. v. Berardi* (Pa. Cmwlth., No. 147 C.D. 2023, filed April 10, 2024).[2]

Meanwhile, on March 12, 2021, before Employer filed its appeal of the WCJ's decision to grant Claimant's Claim Petition, Claimant filed the Reinstatement Petition, alleging his work injury was again causing him decreased earning power as of August 25, 2020. *See* R.R. at 37a-39a. Claimant also filed the Review Petition on the same day, alleging the description of his work-related injury should be "amended to include [a] left knee injury resulting from overcompensation and altered gait following surgery on his right knee." *Id.* at 49a-51a. Additionally, Claimant filed a Petition for Penalties (Penalty Petition #1) alleging Employer violated the Pennsylvania Workers' Compensation Act (Act)[3] by refusing to continue Claimant's modified-duty position after August 25, 2020, and failing to reinstate his wage loss benefits. *Id.* at 43a-45a.

The WCJ consolidated Claimant's petitions and held a hearing, at which Employer moved for each petition's dismissal. *See* R.R. at 365a. Employer argued its appeal of the Claim Petition was still pending and, therefore, judicial estoppel should bar the Reinstatement and Review Petitions. *See id.* Employer also argued the Review Petition was improper because the nature of the injury was "judicially determined." *Id.* Finally, Employer argued the WCJ should dismiss Penalty Petition #1 since "Employer was not under any obligation to make payments because there was a Claim Petition pending and Employer has requested supersedeas." *Id.* On

---

[2]  Employer did not seek permissive review of this Court's decision which affirmed the Board's order affirming the WCJ's order granting the Claim Petition.

[3]  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

May 10, 2021, the WCJ issued an interlocutory order denying Employer's motion to dismiss. *Id.* at 62a-64a.

On May 21, 2021, Claimant filed a second Penalty Petition (Penalty Petition #2), which alleged Employer violated the Act by refusing to pay for compensable medical treatment. *Id.* at 65a-67a. On August 3, 2021, Claimant filed two additional Petitions for Penalties (Penalty Petition #3 and Penalty Petition #4). *Id.* at 70a-72a, 75a-77a. Penalty Petition #3 alleged Employer violated the Act by failing to pay Claimant's benefits and attorney's fees pursuant to the WCJ's March 9, 2021 order. *Id.* at 70a. Penalty Petition #4 alleged Employer violated the Act by failing to pay for additional compensable medical treatments. *Id.* at 75a.

The WCJ, who consolidated Claimant's various petitions, received evidence at multiple hearings. *See* R.R. at 362a-65a. Claimant testified at the hearings that Employer discharged him after his physician would not release him to full-duty employment in August of 2020. *Id.* at 366a. Claimant also explained the issues he began having with his left knee in September of 2020, after having no previous issues with his left knee or suffering any injuries or trauma. *Id.* at 367a. Finally, Claimant explained his ongoing pain symptoms in both knees and the medical treatment he obtained for his left knee, including x-rays, magnetic resonance imaging (MRI), and cortisone injections. *Id.*

Claimant also presented the testimony of Howard Sharf, M.D. (Dr. Sharf), a board-certified orthopedic surgeon who works at the same medical practice as Dr. Katzman. R.R. at 367a. Dr. Sharf reviewed Dr. Katzman's records and took over Claimant's care in August of 2021. *Id.* Dr. Sharf first saw Claimant as a patient on August 23, 2021, at which time Dr. Sharf opined Claimant was not fully recovered from his right knee injury. *Id.* Dr. Sharf administered an injection in Claimant's

right knee on September 17, 2021, which was designed to delay Claimant's need for right knee replacement surgery. *Id.* at 368a. Dr. Sharf did not release Claimant to return to work without restrictions. *Id.*

Dr. Sharf reviewed Claimant's medical records from September 2020, when Claimant first complained of left knee pain. R.R. at 368a. Dr. Sharf discussed the imaging of Claimant's left knee, beginning with an x-ray in October 2020, showing minimal degenerative changes and ending with an x-ray in March of 2021, showing severe degenerative changes. *Id.* Dr. Sharf opined that a change of this magnitude over such a short period is not typical and cannot be attributed to the natural aging process. *Id.* Dr. Sharf further opined that the most likely reason for the change is Claimant's altered gait as a result of his painful right knee. *Id.* at 369a. Thus, Dr. Sharf attributed Claimant's left knee degeneration to Claimant's right knee injury. *Id.*

Employer presented the testimony of Barry Allen Ruht, M.D. (Dr. Ruht), a board-certified orthopedic surgeon who examined Claimant on September 23, 2021. R.R. at 370a. Dr. Ruht observed Claimant's gait and characterized his limp as minimal. *Id.* at 371a. Dr. Ruht's testing and observations led him to conclude Claimant was putting equal weight on both legs during all weight-bearing activities. *Id.* After reviewing Claimant's medical records, Dr. Ruht opined Claimant's left knee problems were secondary to a chronic, preexisting, arthritic left knee. *Id.* at 372a. As a result, Dr. Ruht opined any medical treatment Claimant received for his left knee was not related to Claimant's work injury to his right knee. *Id.*

Employer also presented evidence showing it paid an invoice for Claimant's medical treatments related to the work injury on September 2, 2021. R.R. at 373a. In addition, Employer presented evidence showing it paid Claimant's indemnity

benefits and attorney's fees on June 3, 2021, for October 10, 2019, through November 7, 2019, and on August 26, 2021, for November 8, 2019, through August 6, 2020. *Id.*

### WCJ's Decision

After receiving the testimony and evidence, the WCJ found Claimant's testimony credible and accepted it as fact. R.R. at 373a. The WCJ also accepted Dr. Sharf's expert opinions, which supported Claimant's testimony, as credible. *Id.* The WCJ rejected Dr. Ruht's opinions as not credible to the extent they conflicted with Dr. Sharf's opinions. *Id.* Specifically, the WCJ found Dr. Ruht's attribution of Claimant's left knee symptoms to a traumatic event, which Dr. Ruht could not identify, to be speculative and not credible. *Id.* at 374a.

The WCJ concluded Claimant established his work injury caused his subsequent left knee degeneration. R.R. at 375a. The WCJ rejected Employer's argument that Claimant waived this issue by not raising it during the Claim Petition litigation because Claimant's left knee symptoms began after the record was closed in the Claim Petition litigation. *Id.* As a result, the WCJ granted the Review Petition. *Id.* at 377a. The WCJ also concluded Claimant established Employer should have reinstated his wage loss benefits when Employer terminated his modified-duty employment on August 25, 2020. *Id.* at 375a. As a result, the WCJ granted the Reinstatement Petition. *Id.* at 377a.

The WCJ also concluded Claimant met his burden of proof for Penalty Petition #1 regarding Employer's failure to reinstate wage loss benefits after removing Claimant's modified-duty position and awarded a penalty of 10% "increased to [30%] for Employer's unreasonable delay for wage loss benefits due to Claimant from August 25, 2020[,] to the date this Decision is circulated." R.R. at

6

375a. The WCJ also concluded Claimant met his burden of proof regarding Penalty Petition #3, alleging late payment of benefits and attorney's fees pursuant to the March 9, 2021 order granting the Claim Petition, and awarded a penalty in the amount of $934.20. *Id.* Finally, the WCJ concluded Claimant met his burden of proof regarding Penalty Petition #4, alleging Employer failed to timely pay for compensable medical services, and awarded a penalty in the amount of $337.28. *Id.*

The WCJ concluded Claimant failed to meet his burden of proof regarding Penalty Petition #2, because Claimant failed to present evidence of unpaid compensable medical bills (other than those related to Penalty Petition #4). Therefore, the WCJ denied and dismissed Penalty Petition #2.[4]

***Board's Decision***

Employer appealed the WCJ's decision to the Board to the extent it granted the Reinstatement Petition, Review Petition, and Penalty Petitions #1, #3, and #4. Employer's first argument before the Board was that the WCJ erred in not dismissing Claimant's various petitions as premature due to Employer's ongoing appeal of the underlying Claim Petition. The Board noted the Reinstatement Petition, Review Petition, and Penalty Petitions related to "a time period of disability that [was] subsequent to the period ordered in the Claim Petition, specifically ongoing benefits as of August 25, 2020," and "an additional description of injury not included in the Claim Petition and various Penalties for actions [Employer] undertook following the issuance of the Claim Petition." R.R. at 382a. As a result, the Board rejected Employer's arguments, concluding Claimant's petitions were not premature, did not deal with issues identical to those in the Claim Petition, and did not advocate inconsistent positions. *Id.* at 383a.

---

[4] Claimant did not appeal the WCJ's dismissal of Penalty Petition #2 to the Board or this Court.

7

Employer's second argument before the Board was that the WCJ erred in granting the Reinstatement Petition. R.R. at 384a. After briefly summarizing the testimony and evidence before the WCJ, the Board noted the WCJ accepted Claimant's and Dr. Sharf's testimony as credible, while rejecting Dr. Ruht's testimony as not credible. *Id.* at 386a. The Board then concluded Claimant's evidence, which the WCJ accepted as credible, satisfied his burden of establishing entitlement to a reinstatement of benefits. *Id.* at 387a.

Employer's third argument before the Board was that the WCJ erred in granting the Review Petition and expanding the description of Claimant's work injury to include his left knee. R.R. at 387a. Based upon Claimant's evidence, which the WCJ found credible, the Board determined Claimant satisfied his burden of establishing his left knee injury was caused by the work injury, entitling him to an expanded description of his work injury. *Id.*

Employer's fourth argument before the Board was that the Reinstatement Petition and Review Petition should be barred by res judicata or collateral estoppel[5]

---

[5]   As this Court has explained:

> The judicial doctrine of *res judicata* bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action. For the bar of *res judicata* to apply, both actions must have an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued. . . .

> Collateral estoppel bars re-litigation of an issue decided in a prior action. Collateral estoppel may be applied only if both cases involve the same issue, the prior action was litigated to a final judgment on the merits, the party to be estopped was a party or was in privity with a party to the prior action and had a full and fair opportunity to litigate the issue in the prior action, and resolution of the issue in the prior proceeding was essential to the judgment.

*Pocono Mountain Sch. Dist. v. Kojeszewski (Workers' Comp. Appeal Bd.)*, 280 A.3d 12, 17-18 (Pa. Cmwlth. 2022) (citations and internal quotation marks omitted).

8

because they should have been litigated in the Claim Petition. *Id.* at 388a. The Board noted while Claimant's left knee symptoms began before the WCJ issued an order granting the Claim Petition, the record in the Claim Petition litigation closed before Claimant's left knee symptoms began. *Id.* As a result, the Board concluded Claimant did not have an opportunity to litigate the issues in his Reinstatement Petition and Review Petition during the Claim Petition litigation. *Id.* at 388a-89a. Thus, the Board rejected Employer's res judicata and collateral estoppel arguments.

Employer's fifth argument before the Board was that the WCJ erred in granting Penalty Petitions #1, #3, and #4. With respect to Penalty Petition #3, which alleged delayed payment of benefits and attorney's fees, the Board noted the record established the WCJ granted the Claim Petition on March 9, 2021, and the Board denied Employer's supersedeas request on April 28, 2021. R.R. at 389a. As a result, Employer became liable to pay the benefits ordered in the WCJ's March 9, 2021 order on April 28, 2021. *Id.* at 389a-90a. Nevertheless, Employer's payment history showed it did not pay these benefits until June 3, 2021, and August 26, 2021. *Id.* at 390a. Noting Employer did not give any specific reason for its delay, the Board affirmed the WCJ's order granting Penalty Petition #3 and awarding a 20% penalty for the violation. *Id.*

With respect to Penalty Petition #4, the Board noted Employer did not pay Claimant's medical bill until September 2, 2021, while, again, being obligated to pay it as of April 28, 2021. *Id.* The Board rejected Employer's claim it did not receive the bill on the proper forms and affirmed the WCJ's penalty award.

With respect to Penalty Petition #1, which alleged Employer failed to reinstate Claimant's benefits as of August 25, 2020, the Board noted the WCJ did not judicially determine the work injury and grant the Claim Petition until March 9,

9

2021. R.R. at 390a. As a result, the Board determined Employer had no obligation to reinstate Claimant's benefits before that time. Instead, the Board concluded Employer's obligation to reinstate Claimant's benefits only arose when the WCJ granted the Reinstatement Petition. *Id.* Therefore, the Board reversed the WCJ's award of a penalty related to Employer's failure to reinstate benefits as of August 25, 2020. *Id.*

Employer's sixth and final argument before the Board was that the WCJ erred in determining Employer's contest of the Reinstatement Petition was unreasonable. Noting Employer did not produce any evidence showing Claimant was capable of working in a full-duty capacity as of August 25, 2020, the Board agreed with the WCJ's conclusion that Employer's contest of the Reinstatement Petition was unreasonable.

## II. Issues

On appeal to this Court, Employer raised the following six issues, each of which it previously raised before the Board: (1) whether the Board erred in affirming the WCJ's denial of Employer's motion to dismiss the Reinstatement Petition, Review Petition, and Penalty Petition #1; (2) whether the Board erred in affirming the WCJ's decision to grant the Reinstatement Petition; (3) whether the Board erred in affirming the WCJ's decision to grant the Review Petition; (4) whether the Reinstatement and Review Petitions were barred by res judicata or collateral estoppel;[6] (5) whether the Board erred in granting Penalty Petitions #3 and #4;[7] and (6) whether the Board erred in finding Employer did not present a reasonable contest.

---

[6] Although Employer included arguments related to this issue in its brief within the sections related to its second and third issues on appeal, we, like the Board, address it as a separate issue for clarity and ease of analysis.

[7] Claimant did not challenge the Board's decision reversing the WCJ's award on Penalty Petition #1.

10

Our standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether an error of law was committed, or whether agency practices and procedures or one of the petitioner's constitutional rights were violated. *See* 2 Pa.C.S. § 704. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Healey (Workers' Comp. Appeal Bd.)*, 297 A.3d 872, 883 (Pa. Cmwlth. 2023) (citations omitted). In considering whether an error of law was committed, our standard of review is *de novo*, and our scope of review is plenary. *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 n.4 (Pa. Cmwlth. 2016). In other words, we need not defer to the conclusions of law below, and we review the entire record before us with a fresh pair of eyes.

## A. Employer's Motion to Dismiss

Employer's first issue on appeal is whether the Board erred in affirming the WCJ's denial of Employer's motion to dismiss the Reinstatement Petition, Review Petition, and Penalty Petition #1.[8] Specifically, Employer argues Claimant filed these petitions prematurely, causing Employer to advocate inconsistent positions, because Employer's appeal of the WCJ's order granting Claimant's Claim Petition was still pending.

This Court has consistently held that "matters pending on appeal cannot be revisited by the filing of new, similar petitions." *Gieniec v. Workers' Comp. Appeal Bd. (Palmerton Hosp.)*, 130 A.3d 154, 158 (Pa. Cmwlth. 2015) (citations omitted). The intent of this rule is to prevent "unnecessary and counterproductive relitigation

---

[8] Because Claimant did not challenge the Board's reversal of the WCJ's decision on Penalty Petition #1, that decision is final, and Penalty Petition #1 is no longer reviewable. As a result, we limit our analysis to the Reinstatement and Review Petitions.

of identical issues." *Bechtel Power Corp. v. Workmen's Comp. Appeal Bd. (Miller)*, 452 A.2d 286, 288 (Pa. Cmwlth. 1982) (citation omitted). We have interpreted the rule to "prevent premature petitions [and the] relitigation of identical issues, and to preclude a party from advocating inconsistent positions." *Gieniec*, 130 A.3d at 158.

A petition is premature if it "depend[s] on the outcome of the appeal" of a previous petition. *Id.* In *Gieniec*, the claimant appealed the WCJ's original decision on her claim petition, asserting the WCJ should have awarded her indemnity benefits instead of awarding medical benefits only. *Id.* at 155. While her appeal was pending, the claimant filed a reinstatement petition seeking to reinstate indemnity benefits. *Id.* at 156. Thus, the claimant's "reinstatement petition was premised on a successful appeal of the indemnity claim." *Id.* at 160. Under these circumstances, this Court determined the claimant's reinstatement petition depended on the outcome of her appeal and was, therefore, premature. *Id.* at 158-59.

A party advocates inconsistent positions if his positions are "mutually exclusive." *Gieniec*, 130 A.3d at 159. In *Bechtel Power*, we determined an employer advocated inconsistent positions by filing a termination petition, thereby arguing the claimant's disability existed but had ceased, while also appealing the initial finding of disability, thereby arguing no disability existed. *Bechtel Power*, 452 A.2d at 287-88. Similarly, in *Gieniec*, the claimant filed a reinstatement petition, seeking to reinstate the benefits the WCJ set forth in her original order. *Gieniec*, 130 A.3d at 159. At the same time, the claimant's appeal of the WCJ's original order "challenged the adequacy of the award because it did not include any ongoing disability benefits or wage loss." *Id.* Under these circumstances, this Court determined the claimant's positions were inconsistent. *Id.*

12

Employer argues Claimant's petitions were premature because each petition assumed that Employer's appeal would be denied, which was necessary to establish Claimant's injury occurred in the course and scope of his employment with Employer. *See* Employer's Br. at 30. In determining whether a new petition is premature, however, we consider whether the new petition is premised upon an appeal changing the result of the decision being appealed. *See Gieniec*, 130 A.3d at 158-60. Here, the WCJ's original order determined Claimant's right knee injury occurred in the course and scope of Claimant's employment. The Reinstatement and Penalty Petitions accepted the WCJ's determinations. As a result, Claimant's petitions did not rely on a different outcome on appeal to become viable, and were not, therefore, premature.

Employer also argues it was forced to take inconsistent positions when Claimant filed the Reinstatement and Review Petitions. At the time Claimant filed its Reinstatement and Review Petitions, Employer was appealing whether Claimant's right knee injury was work related, and it would have to acknowledge the compensability of that injury to properly litigate the Reinstatement and Review Petitions. *See* Employer's Br. at 28-29. Our analysis, which is designed to determine whether a subsequent petition should be dismissed, however, is focused on whether the party filing the second petition is advocating inconsistent positions in filing the second petition. Here, Claimant asserts in the Reinstatement and Review Petitions that he should, again, receive benefits for a compensable work injury. This is consistent with his position in the Claim Petition, wherein he also asserted he was entitled to benefits for a compensable work injury. Accordingly, we affirm the Board's decision which affirmed the WCJ's order denying Employer's motion to dismiss the Reinstatement and Review Petitions.

13

**B. Reinstatement Petition**

Employer's second issue on appeal is whether the Board erred in affirming the WCJ's decision to grant the Reinstatement Petition. Employer argues substantial evidence[9] did not support the WCJ's decision because Claimant did not submit any medical evidence establishing his disability status as of August 25, 2020. *See* Employer's Br. at 33.

Section 413(a) of the Act permits a WCJ to reinstate an award of benefits "upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772. "[I]t is a claimant's burden to prove that she is once again disabled because her work injury has increased or recurred." *Lawhorne v. Lutron Elec. Co., Inc. (Workers' Comp. Appeal Bd.)*, 284 A.3d 239, 243 (Pa. Cmwlth. 2022) (citing *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 558 (Pa. 2010)). "The claimant need not re-prove that the disability resulted from a work-related injury during his or her original employment." *Bufford*, 2 A.3d at 558. "Where a claimant returns to work under a suspension, with restriction, that is, does not return to his or her time-of-injury job, but rather to a modified position, is subsequently laid off and petitions for reinstatement of benefits, the claimant is also entitled to the presumption that his or her disability, *i.e.*, loss of earning power, is causally related to the continuing work injury." *McKay v. Workmen's Comp. Appeal Bd. (Osmolinski)*, 688 A.2d 259, 262 (Pa. Cmwlth. 1997).

In addition, it is within the WCJ's sole discretion to resolve conflicting testimony and make credibility determinations. *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159

---

[9] To the extent Employer argued in its Brief the Board committed an error of law, we address Employer's arguments with its fourth issue on appeal.

14

A.3d 61, 69 (Pa. Cmwlth. 2017) (citations omitted). "Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations." *Id.* (citation omitted). If substantial evidence supports the WCJ's factual findings, we may not disturb those findings. *Bartholetti v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 927 A.2d 743, 747 (Pa. Cmwlth. 2007) (citation omitted). "It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citations omitted).

Here, the Board properly noted the WCJ found Claimant credible when he testified to working 20 hours per week in a modified-duty capacity, due to physician-imposed work restrictions, in August 2020. Dr. Sharf, whom the WCJ also found credible, testified that Claimant had not recovered from his right knee work injury and was not released to full-duty employment in August 2020. Employer introduced a letter indicating Claimant would not be permitted to work after August 25, 2020, if he was not released to full-duty employment. We, like the Board, will not disturb the WCJ's credibility determinations and agree these facts support the WCJ's conclusions that Claimant met his burden of proving his earning capacity was again affected by his work injury.

In addition, because Claimant was on modified-duty employment at the time Employer terminated his position, Claimant was entitled to a presumption that his loss of earning power was caused by his work injury. *See McKay*, 688 A.2d at 262. Accordingly, substantial evidence exists to support the WCJ's decision which granted the Reinstatement Petition.

## C. Review Petition

Employer's third issue on appeal is whether the Board erred in affirming the WCJ's decision which granted the Review Petition and expanded the description of Claimant's work injury to include a left knee injury. Employer first argues Section 413(a) of the Act only permits a WCJ to review and modify "a notice of compensation payable and an original or supplemental agreement." *See* Employer's Br. at 36 (quoting 77 P.S. § 771). Because the WCJ determined Claimant's injury was work related, Employer asserts the Board lacked legal authority to modify the WCJ's determination to include the left knee injury.

Employer, however, ignores Section 413(a) of the Act's express language permitting a WCJ to "at any time, modify . . . an award of the [Department of Labor and Industry (Department)] or its workers' compensation judge, upon petition filed by either party with the [D]epartment upon proof that the disability of an injured employe has increased." 77 P.S. § 772. This language confirms Section 413(a) of the Act authorizes a WCJ to amend the description of a work injury, even when the employer has not agreed to the work injury, i.e. the work injury is judicially determined. To hold otherwise would permit employers to avoid liability for subsequent injuries resulting from the work injury simply by denying the original injury was work related. This is an absurd result that runs against the humanitarian purposes of the Act. Accordingly, Employer's argument fails.

Employer's next argument is that substantial evidence[10] did not support the WCJ's decision to grant the Review Petition because Dr. Sharf's opinion was incompetent due to his lack of knowledge of Claimant's condition before his initial examination and his failure to review medical records from before August 2019. *See*

---

[10] To the extent Employer argued in its Brief the Board committed an error of law, we address Employer's arguments with its fourth issue on appeal.

16

Employer's Br. at 37-38. A medical expert's testimony may lack competency to establish a causal relationship between a work injury and a claimant's disability when the expert lacks "any personal knowledge of the [c]laimant's physical condition prior to his examination" and fails to "review any of [the c]laimant's extensive relevant medical records." *See Sw. Airlines v. Workers' Comp. Appeal Bd. (King)*, 985 A.2d 280, 287 (Pa. Cmwlth. 2009).

Although Dr. Sharf did not treat Claimant as a patient until August 2021, Dr. Sharf testified he reviewed Claimant's medical records from his practice as well as additional medical records from outside his practice. *See* R.R. at 136a-37a. Dr. Sharf also specifically noted reviewing x-ray reports from October 2020 and March 2021 on Claimant's left knee. *See id.* at 137a-39a. Dr. Sharf testified the October 2020 x-ray showed minimal degenerative changes, while the March 2021 x-ray showed severe degenerative changes. *Id.* at 139a. Dr. Sharf then opined that such a fast progression is not typical and could not be attributable to the natural aging process. *Id.* at 140a-41a. Since Claimant stated he did not experience any injuries or trauma to his left knee during this time period, Dr. Sharf attributed the injury to an altered gait, which Dr. Sharf identified in previous medical records, resulting from Claimant's right knee pain. *Id.* at 141a-42a. Under these circumstances, Dr. Sharf's testimony was based upon his review of Claimant's medical records, rendering his opinions competent.

Employer also argues the WCJ erred in concluding Claimant's testimony was credible due to the WCJ "[h]aving observed Claimant's testimony at hearing, based upon his demeanor." *See* Employer's Br. at 40 (quoting R.R. at 373a). Specifically, Employer properly notes Claimant testified once by deposition in the matter, and once by telephone, for the limited purpose of discussing his fee agreement. *Id.* Thus,

17

Employer asserts we should not defer to the WCJ's credibility determinations, because those determinations were not based upon the WCJ's observations of Claimant. *Id.*

We decline, however, to negate the WCJ's credibility determinations on this basis. The WCJ who heard and decided Claimant's Claim Petition was the same WCJ who heard and decided the petitions at issue in this appeal. The WCJ's hearings on these two separate proceedings overlapped, as Claimant testified before the WCJ by phone on March 8, 2022, regarding an issue on remand from the Board in the Claim Petition litigation, as well as to close the record with respect to these proceedings. *See* R.R. at 346a-50a. In the underlying Claim Petition litigation, Claimant testified before the WCJ by video. *See id.* at 11a. Thus, while the WCJ erred in stating she observed Claimant's testimony regarding these petitions, the WCJ did observe the Claimant testify in other related proceedings before her. *Id.* In addition, the WCJ did not determine Claimant's testimony was credible based solely upon observing Claimant. Instead, the WCJ compared Claimant's testimony with other known facts in this matter and determined his testimony was credible due, in part, to its consistency. *See id.* at 373a. Given the WCJ was hearing both matters at the same time, the WCJ's mistake is both understandable and harmless.

## D. Res Judicata / Collateral Estoppel

Employer's fourth issue on appeal is whether the Board erred in affirming the WCJ's determination the Reinstatement and Review Petitions were not barred by res judicata or collateral estoppel. Specifically, Employer argues Claimant was aware of his left knee injury and was required to pursue a claim for the injury during the Claim Petition litigation. *See* Employer's Br. at 31-33, 36-37. Employer also argues the Board erred as a matter of law in affirming the WCJ's decision to grant the

18

Reinstatement Petition because Claimant was "required to raise and address th[e] issue during the pendency of th[e] original "Claim Petition." *See* Employer's Br. at 32.

The Board addressed Employer's argument as follows:

> We note the reinstatement date and date of the onset of left knee symptoms occurred in August and September of 2020, which was before the actual issuance of the Claim Petition on March 9, 2021. However, the WCJ concluded that this was still subsequent to the record closing on the Claim Petition, and thus, was too late for Claimant to have had the opportunity to litigate those issues. Consequently, Claimant waited to file the Reinstatement and Review Petitions until after the Claim Petition was granted. Although res judicata applies to matters that were not only actually litigated, but matters which should have been litigated, it is clear that there was never a full opportunity for Claimant to litigate these issues during the prior Claim Petition litigation. See Krouse v. [Workers' Comp. Appeal Bd.] (Barrier Enters.), 837 A.2d 671 (Pa. Cmwlth. 2003)(holding that res judicata applies to those issues actually litigated as well as those issues that should have been litigated). Thus, we conclude Claimant's petitions were not barred by res judicata/collateral estoppel, and we must reject [Employer's] argument to the contrary.

R.R. at 388a-89a. We discern no errors in the Board's determination.

**E. Penalty Petitions #3 and #4**

Employer's fifth issue on appeal is whether the Board erred in affirming the WCJ's decision to grant Penalty Petitions #3 and #4. Employer argues both that its late payments did not constitute unreasonable delay and that Claimant did not submit any evidence to support its request for payment of medical bills. *See* Employer's Br. at 42-45.

A claimant who files a penalty petition bears the burden of proving the employer violated the Act or its rules or regulations. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Hum. Rels. Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). If

19

the claimant meets this burden of proof, the burden shifts to the employer to prove it did not violate the Act. *Id.*

With respect to timeliness of payments, the Board noted Employer became liable to pay Claimant benefits as of April 28, 2021, the date the Board denied Employer's request for supersedeas in its appeal of the WCJ's decision granting the Claim Petition. R.R. at 389a-90. Nevertheless, the evidence presented by Employer showed it paid Claimant's wage loss benefits on June 3, 2021, and August 26, 2021, and that it paid Claimant's medical bill on September 2, 2021. *Id.* at 390a. The Board noted Employer gave "no specific reason for these payments being late." *Id.* Under these circumstances, we discern no error in the Board's affirmance of the WCJ's determination that Employer unreasonably delayed issuing payments.

With respect to Claimant's evidence of medical bills, the Board noted that "[w]hile [Employer] argues the bill was not supplied on the proper forms, Claimant introduced into the record the actual bill . . . and procedure note." R.R. at 390a. As a result, the Board rejected Employer's argument Claimant did not submit any evidence to support its request for payment of medical bills. We, again, discern no error in the Board's affirmance of the WCJ.

## F.  Unreasonable Contest

Employer's sixth issue on appeal is whether the Board erred in determining Employer did not present a reasonable contest in this matter. While Employer presents arguments related to the Review Petition and each Penalty Petition, we note the WCJ concluded Employer's contest was reasonable with respect to the Review Petition and Penalty Petition #2. R.R. at 376a. Claimant did not appeal this determination. In addition, the Board reversed the WCJ's order granting Penalty Petition #1 and awarding penalties. *Id*. at 393a. Claimant did not appeal this

determination either. Therefore, the only penalty awards remaining are those related to the Reinstatement Petition and Penalty Petitions #3 and #4.

Section 440 of the Act provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney['s] fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. § 996(a), added by the Act of February 8, 1972, P.L. 25.

Employer's only argument that its contest to the Reinstatement Petition was reasonable is that "Employer presented a genuine question of law regarding the legal viability of Claimant's Reinstatement Petition." *See* Employer's Br. at 46. Employer's only argument with respect to Penalty Petitions #3 and #4 was that its contest "was also reasonable." *Id.*

As discussed above, Employer's legal arguments relating to Claimant's alleged premature filing of the Reinstatement Petition lacked merit. In addition, as the Board noted:

> The only medical evidence [Employer] entered into the record was Dr. Ruht's testimony concerning Claimant's Review Petition and the expansion of his injury to include a left knee aspect. However, it produced no evidence that Claimant, in fact, could have worked his full duty job when they terminated his employment on August 25, 2020. Because Claimant had the presumption that his wage loss after that point was work-related, as the result of working modified duty, it was [Employer's] burden to prove the wage loss was from another non-

21

work-related cause. Because [Employer] failed to produce any evidence that, if accepted, would have met its burden, its contest was unreasonable.

R.R. at 391a-92a. Under these circumstances, we discern no error in the Board's determination.

With respect to Penalty Petitions #3 and #4, Employer's argument is not adequately developed to permit our review. *See Com. v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) (appellate courts are "neither obligated, nor even particularly equipped, to develop an argument for a party. To do so places the Court in conflicting roles of advocate and neutral arbiter."). Accordingly, we reject Employer's arguments the Board erred in affirming the WCJ's determination Employer's contest to Penalty Petitions #3 and #4 was unreasonable.

## IV. Conclusion

For the reasons set forth above, we affirm the Board's May 22, 2023 Order.

_____
STACY WALLACE, Judge

Judge Fizzano Cannon and Judge Dumas did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,   :
                       Petitioner   :
                                           :
          v.                         :  No.  649 C.D. 2023
                                           :
Amato Berardi (Workers'         :
Compensation Appeal Board),   :
                        Respondent  :

# **O R D E R**

     **AND NOW**, this 20th day of September 2024, the Workers' Compensation Appeal Board's May 22, 2023 Order is hereby **AFFIRMED**.

 

_____

STACY WALLACE, Judge